LUIS A. CARRILLO, Esq. SBN 70398
MICHAEL S. CARRILLO, Esq. SBN 258878
CARRILLO LAW FIRM, LLP
1499 Huntington Drive, Suite 402
South Pasadena, CA 91030
Tel: (626) 799-9375

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CARY LOPEZ, an individual.

Plaintiff,

v.

United States of America; United States Department of Homeland Security; United States Immigration and Customs Enforcement; United States Customs and Border Protection; and DOES 1 through 20, inclusive,

Defendants.

**Case No: 2:26-cv-05628**

**COMPLAINT FOR DAMAGES**

1. **False Arrest/ False Imprisonment**
2. **Assault and Battery**
3. **Violations of the Bane Act (Cal. Civil Code § 52.1)**
4. **Intentional Infliction of Emotional Distress of Plaintiff**
5. **Violations of Civil Rights**
6. **Conspiracy to Commit Civil Rights Violations**
7. **Fourth Amendment – Unlawful Detention and Arrest**
8. **Fourth Amendment -- Excessive Use of Force**
9. **Fifth Amendment – Denial of liberty without due process of law**
10. **Fifth Amendment - Denial of Medical Care**

**DEMAND FOR JURY TRIAL**

**COMES NOW**, Plaintiff **CARY LOPEZ**, ("Plaintiff"), alleges as follows:

## JURISDICTION AND VENUE

1. This action arises directly under the United States Constitution.

2. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## INTRODUCTION

4. This is a civil action for damages brought by the Plaintiff against all of the Defendants for violations of the Plaintiff's constitutional and statutory rights, such as violations of the Fourth Amendment, and violations of the Fifth Amendment. Plaintiff also seek redress for false arrest, false imprisonment, assault, battery, violations of the Bane Act (Cal. Civil Code Section 52.1); and redress for the Intentional Infliction of emotional distress, among other claims, under the Federal Tort Claims Act (FTCA).

5. This civil rights and FTCA action arises out of Plaintiff's unlawful detention, seizure, restraint, arrest, and mistreatment by federal agents at or near 4350 W. 120th Street in Hawthorne, California, on private property where Plaintiff's boyfriend and cousin were working. CARY LOPEZ is a United States citizen. At the time of the incident, she was nine months pregnant. Defendants nevertheless confronted her, threatened her, and used excessive and unreasonable force against her. The Federal agents manhandled Ms. Alvarado by grabbing and pulling Ms. Alvarado's

arms, twisting her arm on the truck, and pushing her body, including her 9-month pregnant belly, onto the truck. Border Patrol or ICE agents then shackled Ms. Alvarado with a chain under her pregnant belly, hands, and legs. Ms. Alvarado was then unlawfully arrested. Ms. Alvarado was still shackled in chains while she was being held for about 9 hours until about 11:30 p.m.

6. Plaintiff alleges that Defendants violated her constitutional rights by detaining, seizing, restraining, and arresting her without reasonable suspicion or probable cause, using excessive and unreasonable force, and depriving her of liberty without due process of law. These violations occurred despite Plaintiff's non-threatening behavior, lack of criminal activity, and repeated statements that the agents needed a warrant and were on private property.

7. Plaintiff further alleges that Defendants' conduct included failing to identify themselves, attempting to force open and break the windows of the truck occupied by Plaintiff's boyfriend and another worker, threatening Plaintiff with the statement "You wanna get killed?," physically manhandling Plaintiff despite her obvious pregnancy, arresting her for alleged obstruction, and detaining her in chains until approximately 11:30 p.m.

8. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered physical pain, emotional trauma, fear, anxiety, and premature labor and premature birth. Plaintiff continues to suffer fear of leaving her home, fear of being recognized or harmed, and fear that she or her baby may again be targeted by immigration agents.

9. Plaintiff alleges that Defendants' actions were arbitrary, unreasonable, and Defendants utilized racial profiling and discriminatory intent, including treating Plaintiff differently based on her race, ethnicity, and/or perceived national origin.

10. The policies, practices, and customs underlying Defendants' conduct, including roving immigration enforcement, failure to require individualized suspicion, failure to properly verify identity and citizenship, use of unnecessary force, and

prolonged detention of individuals without lawful basis, are unconstitutional and have resulted in violations of the civil rights of individuals such as Plaintiff.

11. Plaintiff asserts claims based on Defendants' violations of her rights under the Fourth and Fifth Amendments to the United States Constitution, as well as related FCTA claims, including false arrest/false imprisonment, assault and battery, negligence, violations of the Bane Act, intentional infliction of emotional distress, and conspiracy to commit civil rights violations.

12. Plaintiff seeks to hold Defendants accountable for their unlawful conduct, to obtain compensation for the injuries she suffered, and to deter similar unconstitutional conduct in the future.

## PARTIES

13. At all times relevant, Plaintiff CARY LOPEZ (Hereinafter "Plaintiff" or "LOPEZ"), a U.S. citizen, was an individual residing in the City of Los Angeles. Plaintiff was nine months pregnant at the time of the incident described herein.

14. At all relevant times, Defendant UNITED STATES OF AMERICA was, and is, a sovereign entity and is subject to suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680. The United States is responsible for the acts and omissions of its agencies, including the Department of Homeland Security, Immigration and Customs Enforcement, Customs and Border Protection, and its component agencies, and for the conduct of its employees acting within the course and scope of their employment.

15. At all relevant times, Defendant UNITED STATES DEPARTMENT OF HOMELAND SECURITY ("DHS") was, and is, a department of the Executive Branch of the United States Government and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). DHS is headquartered in Washington, D.C.

16. At all relevant times, Defendant UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT (Hereinafter "ICE") was, and is, a component agency of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). ICE is

headquartered in Washington, D.C. and maintains field offices throughout the United States.

17. At all relevant times, Defendant the UNITED STATES, and the UNITED STATES CUSTOMS AND BORDER PROTECTION (Hereinafter "CBP") was, and is, a component agency of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). CBP is headquartered in Washington, D.C. and maintains field offices throughout the United States.

18. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 20, inclusive, are unknown to Plaintiff, who therefore sue said Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believe, and thereon allege, that each of the DOE Defendants was, at all relevant times, an employee, agent, servant, or representative of Defendants DHS, ICE and/or CBP, and was acting within the course and scope of such employment, agency, or representation. Plaintiff further alleges that the acts and omissions of Defendants, including DOES 1 through 20, were a proximate cause of the injuries and damages sustained by Plaintiff as alleged herein.

19. At all times mentioned herein, each Defendant was responsible in some manner for the acts and occurrences alleged in this Complaint. Plaintiff's damages, as alleged herein, were proximately caused by the acts and omissions of each of the Defendants.

20. Defendants, the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, are collectively referred to herein as "Defendants." Defendant DOES 1 through 20 (the "DOE AGENTS") are Federal agents.

21. At all relevant times, each Defendant was the agent, servant, employee, joint venturer, and/or co-conspirator of each other and every other Defendants, and in doing the acts alleged herein, was acting within the course and scope of such relationship and under color of law. In doing the things herein alleged, Defendants

were acting under the color of law and within the course and scope of their duties of said alternative personality, capacity, identity, agency, representation and/or employment and were within the scope of their authority, whether actual or apparent.

## FACTUAL ALLEGATIONS

22. Plaintiff re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein against all Defendants.

23. Plaintiff CARY LOPEZ is a United States Citizen, of Latina descent, living in the City of Los Angeles in California. CARY LOPEZ was born in Los Angeles, California.

24. On or about June 8, 2025, at approximately 3:08 p.m., LOPEZ received a telephone call from her boyfriend, Brayan, who was working with another male individual at or near 4350 W. 120th Street, Hawthorne, California 90250. The location was an abandoned mall/private property worksite.

25. Brayan informed LOPEZ that ICE agents and/or Border Patrol agents in a white truck were roaming the area. Around approximately 3:21 p.m., LOPEZ received another call from Brayan stating that he and the other worker were being followed by ICE and/or Border Patrol agents. Brayan asked LOPEZ to open the gate so that he could drive the truck into the property.

26. LOPEZ stood at the private gate of the property to allow Brayan and the other worker to enter. At that time, agents arrived and blocked the truck by positioning their vehicles behind it.

27. LOPEZ was standing at or near the private gate and repeatedly told Brayan and the other worker not to open the truck doors because the agents did not have a warrant and were on private property.

28. The agents failed to identify themselves adequately. The agents attempted to force the truck doors open and attempted to break or break the truck windows. LOPEZ called the Hawthorne Police Department for help and reported that unidentified agents were trying to break the truck windows and were attempting to

kidnap or unlawfully seize the occupants because the agents had not identified themselves and had not presented a warrant.

29. Hawthorne Police Department told LOPEZ that someone would be sent right away, but no one came to protect LOPEZ or intervene in the unlawful conduct.

30. While LOPEZ was on the phone and attempting to obtain assistance, one of the agents threatened LOPEZ by stating, “You wanna get killed?”

31. LOPEZ repeatedly told the agents that they needed a warrant. The agents repeatedly told LOPEZ to move out of the way. LOPEZ did not pose a threat to officer safety and was not committing any crime.

32. Despite LOPEZ being visibly nine months pregnant, one of the agents grabbed LOPEZ’s arm, twisted her arm against the truck, pushed her body against the truck, and pressed or pushed her pregnant belly against the truck.

33. Defendants then detained and unlawfully arrested LOPEZ. Defendants placed chains under LOPEZ’s pregnant belly and around her hands and legs. LOPEZ was shackled while nine months pregnant.

34. LOPEZ’s cousin, Alberto Sandoval Alvarado, who was the manager of the property and had access to the location, attempted to help LOPEZ when she was being arrested. Alberto was also unlawfully arrested for alleged obstruction.

35. Defendants broke or shattered the truck windows and arrested Brayan and the other male worker. Upon information and belief, Brayan and/or the other worker were later deported.

36. LOPEZ was detained and confined for about 9 hours, from approximately 3:20 p.m. until approximately 11:30 p.m. that same day.

37. At no time did LOPEZ interfere with lawful law enforcement activity. LOPEZ had not committed any offense, was not suspected of any criminal activity based on individualized facts, and was not a threat to officer safety or national security. LOPEZ was attempting to protect persons on private property, requested that agents identify themselves and present a warrant, and called local law enforcement for help.

38. Defendants lacked reasonable suspicion or probable cause to detain, restrain, or arrest LOPEZ. Nevertheless, Defendants used unreasonable and excessive force against LOPEZ while she was nine months pregnant.

39. As a direct and proximate result of Defendants' conduct, LOPEZ suffered physical pain and injuries, including pain to her arms, abdomen, and body, as well as severe emotional distress, fear, humiliation, and trauma. LOPEZ further alleges that the force, shackling, detention, and emotional distress caused her to go into premature labor and give birth prematurely.

40. LOPEZ continues to suffer extreme emotional distress. In or about December 2025, LOPEZ stated that she remained fearful of leaving or being outside too much because of anxiety she developed after the incident with immigration agents, including fear that someone would recognize her and try to harm her or her baby.

41. LOPEZ has been fearful to walk outside on her own and fearful to return to 4350 W. 120th Street in Hawthorne due to what happened to her on June 8, 2025.

42. The agents involved in the incident were employees and/or agents of ICE, CBP, and/or DHS. Plaintiff alleges that Defendants engaged in racial profiling and used threats, intimidation, and coercive conduct during the incident.

**A. DHS Adopted Policies to Further the United States' Directive to Increase Immigration Enforcement**

43. DHS adopted three challenged policies as part of a broader directive from the White House and Border Czar Homan to increase immigration arrests and removals by raiding workplaces based on which industries tend to employ undocumented workers rather than a prior investigation to identify whether there's any reason to suspect that employees on a particular worksite are undocumented.

44. These directives are aimed at increasing the number of undocumented people arrested and removed from several hundred a day to at least 3,000 per day.

45. The stated goal is to deport one million people per year, which requires 2,739 arrests per day, not counting the citizens and other lawful residents who are

mistakenly arrested.[1]

46. The 3,000-arrests-per-day quota is the "minimum" goal.[2]

47. "Arresting, you know, several hundred a day isn't enough. So yeah, we gotta vastly increase that," confirmed Border Czar Homan.[3]

48. The administration's directive to ICE's leadership was clear: "do what you need to do" to increase deportation numbers. The administration encouraged immigration officers to "push the envelope" and turn the "creativity knob up to 11"; "[i]f it involves handcuffs on wrists, it's probably worth pursuing."[4]

49. To meet the 3,000-daily-arrest quota, the United States has taken several steps that inform the policies challenged here, including: (1) increasing the number of immigration officers, in part by deputizing law-enforcement officers from other agencies; (2) increasing workplace enforcement; and (3) targeting people who work in certain industries and fit a generalized demographic profile rather than conducting targeted investigations to find people who might be violating immigration laws.

**1. Turning Federal Law Enforcement Into Immigration Enforcement**

50. On inauguration day, President Trump signed Executive Order 14159 ("Protecting the American People Against Invasion"), which instructs the Attorney General, DHS, ICE, CBP, U.S. Citizenship and Immigration Services (CIS), and HSI to prioritize immigration arrests and deportations and for the Attorney General and

---

[1] Brittany Gibson & Stef W. Kight, *Scoop: Stephen Miller, Noem tell ICE to supercharge immigration raids* (May 28, 2025), https://www.axios.com/2025/05/28/immigration-ice-deportations-stephen-miller.

[2] *Id.*

[3] Cam Smith, *Vt. Officials respond to Trump administration's 'sanctuary city' threats*, WCAX3 (May 30, 2025), https://www.wcax.com/2025/05/30/vt-officials-respond-trump-administrations-sanctuary-city-threats/; Transcript of interview with White House Border Czar Tom Homan, *State of the Union*, CNN (aired July 13, 2025), https://transcripts.cnn.com/show/sotu/date/2025-07-13/segment/01.

[4] Elizabeth Findell, *et al.*, *The White House Marching Orders That Sparked the L.A. Migrant Crackdown*, Wall St. J. (June 9, 2025), https://www.wsj.com/us-news/protests-los-angeles-immigrants-trump-f5089877.

Secretary of Homeland Security to jointly establish Homeland Security Task Forces nationwide.

51. Executive Order 14159 also instructs the Secretary of Homeland Security to (1) make HSI's "primary mission" enforcement and removal and (2) take all appropriate action to enable the Director of ICE, the Commissioner of CBP, and the Director of CIS to set priorities that ensure enforcement and removal.

52. The Secretary of Homeland Security has statutory authority to "confer or impose" on any federal employee the power to investigate and arrest illegal immigrants. See 8 U.S.C. § 1103(a); without an arrest warrant signed by a Federal judge.

53. On January 23, 2025, the Acting Secretary exercised that power to authorize DOJ law-enforcement officers working for USMS, DEA, ATF, and the Bureau of Prisons to serve as immigration officers.[5]

54. Weeks later, Secretary Noem began deputizing law-enforcement officers from other federal agencies to serve as immigration officers.[6]

55. By August 2025, over 14,500 federal law-enforcement officers, another 1,400 non-law-enforcement federal officers, and about 10,000 state and local law-enforcement officers are now deputized to serve as immigration officers.[7]

**2. Prioritizing Random Arrest Over Targeted Enforcement**

---

[5] Press Release, *Statement from a DHS Spokesperson on Directive Expanding Immigration Law Enforcement to Some Department of Justice Officials*, Dep't of Homeland Sec. (Jan. 23, 2025), https://www.dhs.gov/news/2025/01/23/statement-dhs-spokesperson-directive-expanding-immigration-law-enforcement.

[6] Press Release, *ICYMI: Secretary Noem Deputized State Department Officials as Immigration Officers*, Dep't of Homeland Sec. (Feb. 20, 2025), https://www.dhs.gov/news/2025/02/20/secretary-noem-deputized-state-department-officials-immigration-officers; Vittoria Elliot, *State Department Agents Are Now Working With ICE on Immigration*, WIRED (Sept. 4, 2025), https://www.wired.com/story/state-department-dss-agents-ice-immigration/

[7] David J. Bier, *ICE Has Diverted Over 25,000 Officers from Their Jobs*, Cato Inst. (Sept. 3, 2025), https://www.cato.org/blog/ice-has-diverted-over-25000-officers-their-jobs.

56. Until this year, immigration officers planning to search for and seize undocumented immigrants have had to submit a form to a supervisor identifying their target's name, appearance, known addresses, employment, immigration history, and criminal history.

57. But this year, DHS eliminated the policy that required immigration officers to identify their targets in advance; and without an arrest warrant signed by a Federal judge.

58. The policy became useless, according to former immigration officials, because DHS no longer requires officers to know their targets before they go out to make arrests.[8]

59. Rather than relying on targeted investigations, Border Czar Homan and Secretary Noem directed immigration officers to go on patrols to search for people who work in certain industries and fit a generalized demographic profile of an undocumented worker in that industry.

60. DHS has developed a general demographic profile of what undocumented people tend to look like in an industry or location.

61. A top CBP official, for instance, explained that officers are detaining people based on their "location" and "how they look."[9] Racial profiling was permitted by all Defendants.

**B. Operation "Return to Sender"**

62. Upon information and belief, a lawsuit filed in the Fresno Division of the

---

[8] Julia Ainsley et al., *Under Trump administration, ICE scraps paperwork officers once had to do before immigration arrests*, NBC News (Sept. 9, 2025), https://www.nbcnews.com/politics/national-security/trump-administration-ice-scraps-paperwork-officers-immigration-arrests-rcna229407.

[9] Chip Mitchell, *Feds march into Chicago; top border agent says people are arrested based on 'how they look,'* Chicago Sun Times (Sept. 28, 2025), https://chicago.suntimes.com/immigration/2025/09/28/ice-agents-spotted-downtown-on-michigan-avenue-along-chicago-river.

Eastern District of California arose out of an enforcement operation referred to as "Operation Return to Sender," which was conducted in Kern County and surrounding areas and involved the deployment of approximately sixty federal agents from the El Centro Sector under the direction of Gregory Bovino.[10]

63. The operation involved stops, detentions, and arrests of individuals in predominantly Latino communities, including farmworkers and day laborers, many of whom were not suspected of criminal activity.[11]

64. The allegations in that action included that individuals were detained without individualized suspicion and that enforcement actions were carried out in a manner that disproportionately targeted persons based on race, ethnicity, and/or perceived immigration status, and Federal agents could undertake "racial profiling." Moreover, Federal agents were not required to have an arrest warrant signed by a Federal Judge before arresting the thousands that were arrested.

65. Upon information and belief, the conduct at issue in that action reflects a pattern, practice, or custom of unlawful detention practices and inadequate safeguards to prevent the detention of United States citizens and other individuals without lawful basis.

66. Defendants, were on notice of such conduct and the risk of constitutional violations arising from similar enforcement practices, yet failed to take reasonable steps to prevent such violations, including the conduct alleged in this case.

67. LOPEZ timely submitted a claim for damages to the United States Department of Homeland Security, U.S. Customs and Border Protection, U.S. Immigration and Customs Enforcement, and other appropriate federal agencies. Although the claim was not expressly rejected, it is deemed denied by operation of law because Defendants failed to make a final disposition of the claim within six (6) months

---

[10] *United Farm Workers v. Kristi Noem*, Case No. 1:25-cv-00246-JLT-CDB.

[11] *Id.*

after it was filed. 28 U.S.C. § 2675(a).

## FIRST CLAIM FOR RELIEF

### False Arrest/False Imprisonment

(By Plaintiff against all Defendants)

68. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

69. Defendants, including agents of the UNITED STATES, DHS, ICE, CPB, and DOES 1 through 20, while acting within the course and scope of their employment, intentionally deprived Plaintiff of her freedom of movement by use of force, threats of force, chains and unreasonable duress.

70. Defendants detained, restrained, and arrested Plaintiff without reasonable suspicion, probable cause, or any lawful justification.

71. Plaintiff did not consent to the detention, restraint, or arrest.

72. On or about June 8, 2025, in Hawthorne, California, Defendants approached and seized Plaintiff while she was standing at a private gate of private property where her boyfriend and cousin were working. Plaintiff was not committing any crime and had repeatedly told agents they needed a warrant.

73. Without lawful justification, Defendants grabbed Plaintiff, twisted her arm against a truck, pushed her body and pregnant belly against the truck, and shackled her with chains under her pregnant belly and around her hands and legs.

74. Defendants detained Plaintiff from approximately 3:20 p.m. until approximately 11:00 p.m. despite her status as a United States citizen, her obvious pregnancy, and the lack of any lawful basis for detention.

75. At all times, Plaintiff had committed no crime, was not suspected of committing any crime, and Defendants lacked any legal basis to detain or arrest her. Defendants' conduct in detaining, restraining, and arresting Plaintiff was unlawful and without privilege or consent.

76. Defendants' conduct was a substantial factor in causing harm to Plaintiff

77. As a direct and proximate result of Defendants' actions, Plaintiff suffered loss of liberty, physical injury, emotional distress, premature labor and premature birth, humiliation, and other damages.

78. Defendants acted willfully, knowingly, and with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive and exemplary damages.

79. Defendants are liable for Plaintiff's injuries because they were integral participants in the unlawful detention and arrest and/or failed to intervene to prevent the violations described herein.

80. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

81. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## SECOND CLAIM FOR RELIEF

### Assault and Battery

(By Plaintiff against all Defendants)

82. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

83. Defendants the UNITED STATES, and DHS, ICE, CBP, and DOES 1 through 20, inclusive, while acting within the course and scope of their employment, intentionally and unlawfully used force against Plaintiff.

84. Defendants intentionally and unlawfully used force against Plaintiff while she was nine months pregnant.

85. Defendants' conduct included grabbing and pulling Plaintiff's arms, twisting her arm against a truck, pushing her body and pregnant belly against the truck, shackling her with chains under her belly and around her hands and legs, and detaining her for several hours.

86. The force used by Defendants was harmful and offensive, was carried out

without Plaintiff's consent, and was excessive and unreasonable under the circumstances, as Plaintiff was not committing any crime, was not resisting, and posed no threat to officer safety.

87. At all times, Plaintiff had committed no crime, was not suspected of committing any crime, and Defendants lacked any lawful basis to use force against her.

88. The force used by Defendants was unreasonable and excessive under the circumstances, including in light of the fact that Plaintiff was not committing any crime, did not pose a threat.

89. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical injuries, premature labor and premature birth, emotional distress, humiliation, and psychological trauma.

90. Defendants, and each of them, either directly participated in the unlawful use of force, were integral participants in the conduct, and/or failed to intervene to prevent the unlawful use of force despite having a realistic opportunity to do so.

91. The conduct of Defendants was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's rights, entitling Plaintiff to an award of punitive and exemplary damages against the individual Defendants.

92. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

93. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## **THIRD CLAIM FOR RELIEF**

### **Violations of Bane Act (Cal. Civil Code § 52.1)**

(By Plaintiff against all Defendants)

94. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

95. California Civil Code section 52.1 (the "Bane Act") prohibits any person from interfering, or attempting to interfere, by threats, intimidation, or coercion, with

the exercise or enjoyment of rights secured by the Constitution or laws of the United States or the State of California.

96. Defendants the UNITED STATES, and DHS, ICE, CBP, and DOES 1 through 20, inclusive, while acting within the course and scope of their employment, intentionally interfered with Plaintiff's constitutional rights by means of threats, intimidation, and coercion.

97. Defendants' conduct included, but was not limited to, threatening Plaintiff by stating "You wanna get killed?," grabbing and twisting Plaintiff's arm, pushing Plaintiff's pregnant belly into a truck, shackling Plaintiff in chains under her belly and around her hands and legs, and detaining her for several hours.

98. During the incident, Defendants engaged in threats, intimidation, and coercion independent of the underlying detention, including threatening Plaintiff by asking, "You wanna get killed?", grabbing and pulling her arms, twisting her arm against a truck, pushing her nine-month-pregnant body and belly against the truck, and shackling her with chains around her hands, legs, and underneath her pregnant belly. Defendants further ignored Plaintiff's obvious pregnancy, disregarded her status as a United States citizen, refused to reasonably investigate her identity or authority to be on the private property, and continued to detain and restrain her despite the serious and foreseeable risk of medical harm to both Plaintiff and her unborn child. These acts were coercive, threatening, and intimidating beyond the detention itself, and directly contributed to Plaintiff's physical injury, emotional distress, premature labor, and premature birth.

99. The conduct of Defendants constituted threats, intimidation, or coercion separate from, and in addition to, the underlying unlawful detention, including the use of physical restraints and prolonged confinement to compel Plaintiff's compliance and submission.

100. Through the above-described conduct, Defendants interfered with Plaintiff's rights, including but not limited to the right to be free from unreasonable

searches and seizures, the right to liberty, and the right to due process of law.

101. Defendants acted intentionally, knowingly, and with reckless disregard for Plaintiff's rights, and their conduct was malicious, oppressive, and in conscious disregard of those rights.

102. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical pain, premature labor, emotional distress, humiliation, and other damages.

103. The conduct of Defendants was a substantial factor in causing Plaintiff's harm.

104. Defendants are liable for Plaintiff's injuries because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations.

105. Plaintiff seeks compensatory damages, statutory damages, attorneys' fees, costs, and all other relief deemed just and proper.

106. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## FOURTH CLAIM FOR RELIEF

**Intentional Infliction of Emotional Distress**

(By Plaintiff against all Defendant)

107. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

108. Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, engaged in extreme and outrageous conduct toward Plaintiff.

109. Defendants' conduct included, but was not limited to: arriving at and entering private property at or near 4350 W. 120th Street, Hawthorne, California; failing to adequately identify themselves and failing to present a warrant; blocking the work truck by positioning their vehicles behind it; attempting to force open the truck doors and breaking and/or shattering the truck windows; threatening Plaintiff by stating, "You wanna get killed?"; grabbing Plaintiff's arm, twisting it, pushing Plaintiff's body against the truck, and pressing Plaintiff's visibly nine-month-pregnant

abdomen against the truck; unlawfully detaining and arresting Plaintiff without reasonable suspicion or probable cause; placing Plaintiff in chains and shackles, including chains placed under Plaintiff's pregnant belly and restraints around her hands and legs; and detaining and confining Plaintiff for several hours, from approximately 3:20 p.m. until approximately 11:00 p.m. on June 8, 2025, despite Plaintiff's repeated statements that she was not committing any crime, posed no threat, and was requesting that Defendants identify themselves and present a warrant.

110. Defendants knew, or should have known, that their conduct would cause Plaintiff severe emotional distress, particularly given that Plaintiff is a United States citizen born in Los Angeles, California. Plaintiff was not committing any crime, was not suspected of criminal activity based on individualized facts, and posed no threat to officer safety or national security. Plaintiff repeatedly requested that Defendants identify themselves and present a warrant and sought assistance from local law enforcement. Plaintiff was visibly nine months pregnant when Defendants used force against her, shackled her with chains placed under her pregnant belly, and detained her for hours. Defendants' actions caused Plaintiff physical pain, fear, humiliation, trauma, and ongoing anxiety, including fear of leaving her home and fear of returning to the location of the incident, and further caused Plaintiff to go into premature labor and give birth prematurely.

111. Defendants' conduct was intentional and/or reckless, and was carried out with a conscious disregard for Plaintiff's rights and well-being.

112. The conduct described herein was so extreme and outrageous as to exceed all bounds of that usually tolerated in a civilized society.

113. As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe emotional distress, including but not limited to humiliation, anxiety, fear, shock, and mental anguish, arising from the traumatic experience of being wrongfully detained and treated as a criminal.

114. Plaintiff also suffered physical manifestations of emotional distress,

including pain, discomfort, premature labor, and bodily harm associated with the force used during her detention and arrest.

115. Defendants' conduct was a substantial factor in causing Plaintiff's injuries.

116. The conduct of Defendants was willful, wanton, malicious, and oppressive, entitling Plaintiff to an award of exemplary and punitive damages against the individual Defendants.

117. Defendants are liable for Plaintiff's injuries because they directly participated in the conduct, were integral participants, and/or failed to intervene to prevent the wrongful acts; and defendants inflicted the intentional infliction of emotional distress.

118. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

119. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## FIFTH CLAIM FOR RELIEF

**Violation of Civil Rights**

(By Plaintiff against all Defendants)

120. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

121. This cause of action is brought pursuant to the United States Constitution for violation of Plaintiff's Civil rights under the Fourth and Fifth Amendments to the United States Constitution, including the right to be free from unreasonable seizures and the right to liberty without due process of law.

122. Upon information and belief, Defendants, acting under color of federal authority, intentionally, recklessly, and/or with deliberate indifference to Plaintiff's clearly established constitutional and civil rights, engaged in unlawful acts and omissions, including but not limited to:

a. detaining, seizing, restraining, and arresting Plaintiff at or near 4350 W. 120th Street, Hawthorne, California, without reasonable suspicion or probable cause;

b. failing to adequately identify themselves and/or their authority and failing to present a warrant while on private property;

c. blocking and seizing the work truck by positioning Defendants' vehicles behind it and preventing the occupants from leaving;

d. attempting to force entry into the truck by trying to open the doors and breaking and/or shattering the truck windows;

e. threatening Plaintiff, including by stating, "You wanna get killed?";

f. using unnecessary and excessive force against Plaintiff, including grabbing Plaintiff's arm, twisting it, pushing Plaintiff's body against the truck, and pressing Plaintiff's visibly nine-month-pregnant abdomen against the truck;

g. placing Plaintiff in chains and shackles while she was nine months pregnant, including placing chains under Plaintiff's pregnant belly and restraining Plaintiff's hands and legs;

h. continuing to detain and confine Plaintiff for hours, from approximately 3:20 p.m. until approximately 11:00 p.m. on June 8, 2025, despite the absence of any lawful basis;

i. failing to recognize and/or disregarding that Plaintiff posed no threat and was not committing any crime, and that Plaintiff was attempting to request identification, a warrant, and assistance from local law enforcement;

j. arresting Plaintiff for alleged "obstruction" or similar conduct based on Plaintiff's verbal requests for a warrant and identification and her efforts to seek police assistance, rather than any unlawful act;

k. failing to provide reasonable accommodations and care given

Plaintiff's obvious medical condition (nine months pregnant) and failing to timely respond to Plaintiff's need for medical attention following the use of force, shackling, and prolonged detention;

l. failing to implement or follow reasonable procedures for lawful detention, investigation, and use of force, including procedures governing operations on private property and warrant requirements;

m. failing to adequately train, supervise, and discipline agents regarding lawful detention, warrant requirements, use of force (including force against pregnant individuals), shackling/restraints, and detainee medical needs; and

n. failing to properly communicate and coordinate information among agents during the incident, including regarding the basis (if any) for detention/arrest, the decision to use force, and the decision to shackle and detain Plaintiff for hours.

123. The foregoing conduct deprived Plaintiff of rights secured by the Constitution and laws of the United States, including but not limited to the right to be free from unreasonable seizures, excessive force, unlawful detention, and deprivation of liberty without due process of law under the Fourth and Fifth Amendments.

124. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered physical pain, bodily injury, emotional distress, humiliation, embarrassment, anxiety, premature labor, and other damages according to proof.

125. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

126. Plaintiff seeks compensatory damages, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## **<u>SIXTH CLAIM FOR RELIEF</u>**

### **Conspiracy to Commit Civil Rights Violations**

(By Plaintiff against all Defendants)

127. Plaintiff re-alleges and incorporates by reference each and every

paragraph above as though set forth fully in this cause of action.

128. This cause of action is brought pursuant to the United States Constitution for conspiracy to violate Plaintiff's rights under the Fourth and Fifth Amendments to the United States Constitution, including the right to be free from unreasonable seizures and the right to liberty without due process of law. A conspiracy claim under *Bivens* is actionable where there is an express or implied agreement among defendants to deprive a person of constitutional rights, and an actual deprivation resulting from that agreement.

129. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP and DOES 1 through 20, inclusive, reached an express and/or implied agreement among themselves to detain, restrain, and subject Plaintiff to unlawful treatment without reasonable suspicion or probable cause.

130. In furtherance of their agreement, Defendants acted in concert to block the truck, attempt to force open or break the truck windows, order Plaintiff to move, threaten Plaintiff, grab Plaintiff, twist her arm, push her pregnant belly into the truck, shackle her with chains, and detain her for several hours.

131. Defendants knew or reasonably should have known that Plaintiff was a United States citizen who had committed no crime and posed no threat, yet nonetheless agreed to continue Plaintiff's detention and restraint without lawful justification.

132. Upon information and belief, Defendant's actions were motivated, in whole or in part, by Plaintiff's race, ethnicity, and/or perceived national origin, and not by any lawful or objective criteria.

133. Defendants' conduct constituted impermissible racial profiling and selective enforcement in violation of the equal protection component of the Fifth Amendment, in that Defendants targeted Plaintiff based on her race/ethnicity, appearance, and/or perceived immigration status, rather than on any individualized, objective facts establishing reasonable suspicion or probable cause that Plaintiff had committed any crime.

134. Defendants' decision to detain and arrest Plaintiff, and to continue detaining her for hours, despite Plaintiff's repeated statements that she was not committing any crime, her requests that Defendants identify themselves and present a warrant, and the absence of any lawful basis to seize her, further demonstrates that Defendants' actions were not motivated by legitimate law enforcement objectives, but were instead driven, at least in part, by discriminatory intent and/or an unlawful purpose to target individuals perceived to be immigrants or of Latino descent.

135. The coordinated actions of Defendants were not the result of independent decision-making, but rather were undertaken pursuant to a shared understanding and agreement to deprive Plaintiff of her constitutional rights.

136. As a direct and proximate result of this agreement and the acts taken in furtherance thereof, Plaintiff was subjected to an unlawful seizure, excessive force, and deprivation of liberty and equal protection without due process of law.

137. The conduct of each individual Defendants was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages.

138. Defendants are liable for the constitutional violations alleged herein because they were integral participants in the conspiracy and resulting unlawful conduct and/or failed to intervene to prevent the violations despite having a realistic opportunity to do so.

139. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

140. Plaintiff further seeks punitive damages against the individual DOE Defendants.

**<u>SEVENTH CLAIM FOR RELIEF</u>**

**Fourth Amendment—Detention and Arrest**

(By Plaintiff against all Defendants)

141. Plaintiff re-alleges and incorporates by reference each and every

preceding paragraph as though fully set forth herein.

142. The Fourth Amendment protects individuals against unreasonable searches and seizures, including detention without reasonable suspicion and arrest without probable cause, as well as the use of excessive force during a seizure.

143. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, detained, restrained, and seized Plaintiff without reasonable suspicion or probable cause, thereby subjecting Plaintiff to an unlawful detention and arrest in violation of the Fourth Amendment.

144. At all relevant times, Defendants lacked reasonable suspicion or probable cause to detain or arrest Plaintiff. Plaintiff had committed no crime, was not suspected of any criminal activity based on individualized facts, and was standing at or near the gate of private property while nine months pregnant.

145. Defendants continued to detain Plaintiff despite the absence of any lawful basis, despite her obvious pregnancy, and despite the fact that she had called local police for assistance.

146. Defendants further violated Plaintiff's Fourth Amendment rights by subjecting her to excessive and unreasonable force, including grabbing Plaintiff's arm, twisting it, pushing Plaintiff's body against the truck, and pressing Plaintiff's visibly nine-month-pregnant abdomen against the truck, and then arresting and restraining Plaintiff in chains and shackles (including chains placed under Plaintiff's pregnant belly and restraints around her hands and legs), causing physical pain and injury.

147. Defendants' conduct, including the unlawful detention, use of significant physical force, continued restraint, and confinement in a custodial setting despite the absence of any lawful basis for the seizure, was objectively unreasonable under the circumstances and not justified by any legitimate law enforcement need.

148. Each Defendant is liable for these violations because they directly participated in the unlawful conduct, were integral participants, and/or failed to

intervene to prevent the violations despite having a realistic opportunity to do so.

149. Upon information and belief, Defendants acting under color of federal law, implemented, maintained, and/or permitted policies, practices, or customs that directly resulted in the unlawful seizure, prolonged detention, and use of excessive force against Plaintiff in violation of the Fourth Amendment.

150. These policies, practices, and customs included, but were not limited to: (a) detaining, seizing, and arresting individuals on private property without reasonable suspicion or probable cause, including based on perceived immigration status rather than individualized facts; (b) failing to implement and follow adequate procedures to ensure agents identify themselves and obtain and/or present a warrant when required before attempting to seize individuals on private property; (c) failing to implement adequate procedures to promptly investigate and document the lawful basis (if any) for detention and arrest, including when individuals assert they are United States citizens and request verification; and (d) permitting the use of unnecessary and excessive force and restraints, including force against visibly pregnant individuals and the use of chains and shackles (including chains placed under a pregnant belly) and prolonged restraint/detention, absent any legitimate law enforcement justification.

151. Defendants knew or reasonably should have known that such policies, practices, and failures would lead to violations of the Fourth Amendment, including unlawful seizures and excessive force, yet failed to take reasonable steps to prevent such violations.

152. As a direct and proximate result of Defendants' actions, Plaintiff suffered physical injury, pain, emotional distress, humiliation, and other damages.

153. Defendants' conduct was willful, wanton, reckless, and in conscious disregard of Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages against the individual Defendants.

154. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

155. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## EIGHT CLAIM FOR RELIEF

**Fourth Amendment—Excessive Force**

(By Plaintiff against all Defendants)

156. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

157. Defendants, including agents of the UNITES STATES DHS, ICE, CBP, and DOES 1 through 20, inclusive, used force against Plaintiff during her detention and arrest at or near 4350 W. 120th Street in Hawthorne, California.

158. The force used by Defendants was objectively unreasonable under the circumstances. Plaintiff was compliant at all times, posed no threat to the safety of any officer or others, was not attempting to flee, and was not suspected of committing any crime.

159. Notwithstanding the absence of any legitimate law enforcement need, Defendants used significant physical force against Plaintiff, including grabbing Plaintiff's arm, twisting it, pushing Plaintiff's body against the truck, and pressing Plaintiff's visibly nine-month-pregnant abdomen against the truck, and then detaining and arresting Plaintiff, placing Plaintiff in chains and shackles (including chains placed under Plaintiff's pregnant belly and restraints around her hands and legs), and confining Plaintiff for several hours.

160. The force used against Plaintiff caused physical pain and injury, including pain and injuries to Plaintiff's arms, abdomen, and body, as well as bruising, soreness, and significant emotional distress, fear, humiliation, and trauma. Plaintiff further alleges that the force, shackling, and detention caused her to go into premature labor and give birth prematurely.

161. Defendants' use of force was unnecessary, excessive, and disproportionate to any perceived need, and was not justified by any legitimate

governmental interest, particularly where Plaintiff was not committing any crime, was not resisting, and posed no threat to officer safety.

162. The force used against Plaintiff was part of, and exacerbated by, an unlawful detention, further rendering the use of force unreasonable under the Fourth Amendment.

163. Each individual Defendant is liable for the use of excessive force because they directly participated in the conduct, were integral participants, and/or failed to intervene to prevent the unlawful use of force despite having a realistic opportunity to do so.

164. As a direct and proximate result of Defendant's actions, Plaintiff suffered physical injury, pain, emotional distress, humiliation, premature labor, and other damages.

165. The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff constitutional rights, entitling Plaintiff to an award of punitive damages

166. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

167. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## NINTH CLAIM FOR RELIEF

### Fifth Amendment - Denial of Liberty Without Due Process of Law

(By Plaintiff against all Defendants)

168. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

169. The Due Process Clause of the Fifth Amendment provides that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend.

170. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP,

and DOES 1 through 20, inclusive, acting under color of federal law, deprived Plaintiff of protected liberty and property interests without due process of law.

171. Defendants deprived Plaintiff of her liberty by unlawfully detaining, seizing, and restraining her at or near 4350 W. 120th Street, Hawthorne, California, on June 8, 2025, without probable cause, reasonable suspicion, or any lawful justification.

172. During this detention, Defendants restricted Plaintiff's freedom of movement by blocking the work truck with their vehicles, physically seizing Plaintiff, grabbing and twisting Plaintiff's arm, pushing Plaintiff's body against the truck and pressing Plaintiff's visibly nine-month-pregnant abdomen against the truck, placing Plaintiff under arrest, placing Plaintiff in chains and shackles (including chains placed under Plaintiff's pregnant belly and restraints around her hands and legs), and confining Plaintiff for several hours, from approximately 3:20 p.m. until approximately 11:00 p.m., preventing her from leaving despite her compliance and the absence of any lawful basis.

173. Defendants' decision to continue detaining Plaintiff despite Plaintiff's repeated statements that she was not committing any crime, her requests that Defendants identify themselves and present a warrant, and her efforts to obtain assistance from local law enforcement, demonstrates that the detention was arbitrary, unreasonable, and not based on any legitimate law enforcement objective.

174. Defendants knew, or reasonably should have known, that Plaintiff's continued detention was baseless, yet failed to release her.

175. Upon information and belief, Defendants lacked adequate procedures, training, or safeguards to ensure that individuals are promptly released once it becomes apparent that there is no lawful basis for detention.

176. Defendant's conduct was arbitrary, conscience-shocking, and undertaken without any legitimate governmental interest.

177. Defendants acted with deliberate indifference to Plaintiff's rights by detaining and continuing to detain Plaintiff despite the absence of any lawful basis and

despite Plaintiff's repeated statements and other readily available indicia that she was a United States citizen and not committing any crime, and despite Plaintiff's repeated requests that Defendants identify themselves and present a warrant and/or verify the basis for their actions.

178. Upon information and belief, Defendant's actions were motivated, in whole or in part, by Plaintiff's race, ethnicity, and/or perceived national origin, further rendering the deprivation of Plaintiff's liberty and property unlawful.

179. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of liberty, emotional distress, humiliation, and other damages.

180. The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages for the conduct of Does 1- through 20.

181. Defendants are liable for the violations of Plaintiff's Fifth Amendment rights because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations.

182. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

183. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## TENTH CLAIM FOR RELIEF

**Fifth Amendment - Denial of Medical Care**

(By Plaintiff against all Defendants)

184. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

185. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, deprived Plaintiff of her rights under the Fifth Amendment by failing to provide and timely obtain necessary medical care while Plaintiff was in custody, despite Plaintiff's obvious

pregnancy, the force used against her body and pregnant belly, and the substantial risk of harm to Plaintiff and her unborn child, thereby acting with deliberate indifference to Plaintiff's serious medical needs.

186. While in Defendants' custody, Plaintiff exhibited obvious signs of physical injury and medical distress, including pain to her arms, abdomen, and body, and visible distress following Defendants' use of force against her while she was visibly nine months pregnant, including pushing her pregnant belly against the truck and placing her in chains and shackles (including chains placed under her pregnant belly).

187. Plaintiff requested medical attention from Defendants during and/or after the use of force, shackling, and detention.

188. Despite Plaintiff's requests and the apparent need for medical care given her condition and the force used, Defendants failed to provide or timely obtain appropriate medical evaluation and treatment for Plaintiff.

189. Defendants knew, or reasonably should have known, that Plaintiff faced a substantial risk of harm if her medical needs were not addressed, particularly given that she was nine months pregnant and had been subjected to force, restraints, and prolonged detention, yet consciously disregarded that risk.

190. Defendants' failure to provide medical care was objectively unreasonable under the circumstances and constituted deliberate indifference to Plaintiff's serious medical needs in violation of the Fifth Amendment.

191. As a direct and proximate result of Defendants' conduct, Plaintiff suffered unnecessary pain, emotional distress, fear, humiliation, and trauma, and Plaintiff further alleges that the force, shackling, detention, and resulting distress caused her to go into premature labor and give birth prematurely.

192. The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's Fifth Amendment rights, including deliberate indifference to Plaintiff's serious medical needs, thereby entitling

Plaintiff to an award of punitive damages.

193. Defendants are liable for the violations of Plaintiff's Fifth Amendment rights because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the denial of necessary medical care.

194. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

195. Plaintiff further seeks punitive damages against the individual DOE Defendants.

**PRAYER FOR RELIEF**

196. WHEREFORE, Plaintiff respectfully requests entry of judgment in her favor and against Defendants the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, as follows:

a. For compensatory damages, including damages under federal law, in an amount to be proven at trial;
b. For punitive damages against the individual DEFENDANTS, DOES 1 through 20;
c. For reasonable attorneys' fees pursuant to applicable law;
d. For costs of suit incurred herein;
e. For pre-judgment and post-judgment interest as allowed by law; and
f. For such other and further relief as the Court may deem just, proper, and appropriate.

DATED: May 26, 2026

CARRILLO LAW FIRM, LLP

By: ______________________

Luis A. Carrillo, Esq.,
Attorney for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

DATED: May 26, 2026

CARRILLO LAW FIRM, LLP

By: ______________________

Luis A. Carrillo, Esq.,
Attorney for Plaintiff