LUIS A. CARRILLO, Esq. SBN 70398
MICHAEL S. CARRILLO, Esq. SBN 258878
MARIA F. GARCIA BALDIZZONE, Esq., SBN 367907
**CARRILLO LAW FIRM, LLP**
1499 Huntington Drive, Suite 402
South Pasadena, CA 91030
Tel: (626) 799-9375

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**CARY LOPEZ**, an individual.

Plaintiff,

v.

**United States of America**; and **DOES 1 through 20**, inclusive,

Defendants.

**Case No: 2:26-cv-05628-DMG-AS**

**FIRST AMENDED COMPLAINT FOR DAMAGES**

1. **False Arrest/ False Imprisonment**
2. **Assault and Battery**
3. **Intentional Infliction of Emotional Distress of Plaintiff**
4. **Violations of Civil Rights (California Civil Code § 53.8)**
5. **Conspiracy to Commit Civil Rights Violations (California Civil Code § 53.8)**
6. **Fourth Amendment – Unlawful Detention and Arrest (California Civil Code § 53.8)**
7. **Fourth Amendment -- Excessive Use of Force (California Civil Code § 53.8)**
8. **Fifth Amendment – Denial of liberty without due process of law (California Civil Code § 53.8)**
9. **Fifth Amendment - Denial of Medical Care(California Civil Code § 53.8)**

**10.Fourth Amendment – Unlawful Detention and Arrest (*Bivens*)**
**11.Fourth Amendment -- Excessive Use of Force (*Bivens*)**
**12. Violations of the Bane Act (Cal. Civil Code § 52.1)**

**DEMAND FOR JURY TRIAL**

**COMES NOW**, Plaintiff **CARY LOPEZ**, ("Plaintiff"), alleges as follows:

## JURISDICTION AND VENUE

1. This action arises directly under the United States Constitution.

2. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## INTRODUCTION

4. This is a civil action for damages brought by the Plaintiff against all of the Defendants for violations of the Plaintiff's constitutional and statutory rights, such as violations of the Fourth Amendment, and violations of the Fifth Amendment. Plaintiff also seek redress for false arrest, false imprisonment, assault, battery, violations of the Bane Act (Cal. Civil Code Section 52.1); and redress for the Intentional Infliction of emotional distress, among other claims, under the Federal Tort Claims Act (FTCA).

5. This civil rights and FTCA action arises out of Plaintiff's unlawful

detention, seizure, restraint, arrest, and mistreatment by federal agents at or near 4350 W. 120th Street in Hawthorne, California, on private property where Plaintiff's boyfriend and cousin were working. CARY LOPEZ is a United States citizen. At the time of the incident, she was nine months pregnant. Defendants nevertheless confronted her, threatened her, and used excessive and unreasonable force against her. The Federal agents manhandled Ms. Lopez by grabbing and pulling Ms. Lopez's arms, twisting her arm on the truck, and pushing her body, including her 9-month pregnant belly, onto the truck. Border Patrol or ICE agents then shackled Ms. Lopez with a chain under her pregnant belly, hands, and legs. Ms. Lopez was then unlawfully arrested. Ms. Lopez was still shackled in chains while she was being held for about 9 hours until about 11:30 p.m.

6. Plaintiff alleges that Defendants violated her constitutional rights by detaining, seizing, restraining, and arresting her without reasonable suspicion or probable cause, using excessive and unreasonable force, and depriving her of liberty without due process of law. These violations occurred despite Plaintiff's non-threatening behavior, lack of criminal activity, and repeated statements that the agents needed a warrant and were on private property.

7. Plaintiff further alleges that Defendants' conduct included failing to identify themselves, attempting to force open and break the windows of the truck occupied by Plaintiff's boyfriend and another worker, threatening Plaintiff with the statement "You wanna get killed?," physically manhandling Plaintiff despite her obvious pregnancy, arresting her for alleged obstruction, and detaining her in chains until approximately 11:30 p.m.

8. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered physical pain, emotional trauma, fear, anxiety, and premature labor and premature birth. Plaintiff continues to suffer fear of leaving her home, fear of being recognized or harmed, and fear that she or her baby may again be targeted by immigration agents.

9. Plaintiff alleges that Defendants' actions were arbitrary, unreasonable, and Defendants utilized racial profiling and discriminatory intent, including treating Plaintiff differently based on her race, ethnicity, and/or perceived national origin.

10. The policies, practices, and customs underlying Defendants' conduct, including roving immigration enforcement, failure to require individualized suspicion, failure to properly verify identity and citizenship, use of unnecessary force, and prolonged detention of individuals without lawful basis, are unconstitutional and have resulted in violations of the civil rights of individuals such as Plaintiff.

11. Plaintiff asserts claims based on Defendants' violations of her rights under the Fourth and Fifth Amendments to the United States Constitution, as well as related FTCA claims, including false arrest/false imprisonment, assault and battery, negligence, violations of the Bane Act, intentional infliction of emotional distress, and conspiracy to commit civil rights violations.

12. Plaintiff seeks to hold Defendants accountable for their unlawful conduct, to obtain compensation for the injuries she suffered, and to deter similar unconstitutional conduct in the future.

13. The individual DOE AGENTS acted under color of federal law. Plaintiff sues them in their individual capacities under Civil Code sections 52.1 and 53.8 and, as specified below, under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics* (1971) 403 U.S. 388.

## **PARTIES**

14. At all times relevant, Plaintiff CARY LOPEZ (Hereinafter "Plaintiff" or "LOPEZ"), a U.S. citizen, was an individual residing in the City of Los Angeles. Plaintiff was nine months pregnant at the time of the incident described herein.

15. At all relevant times, Defendant UNITED STATES OF AMERICA was, and is, a sovereign entity and is subject to suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680. The United States is responsible for the acts and omissions of its agencies, including the Department of Homeland Security,

Immigration and Customs Enforcement, Customs and Border Protection, and its component agencies, and for the conduct of its employees acting within the course and scope of their employment.

16. DOES 1 and 2 are the two federal agents involved in the intial entry, seizure and unlawful arrest of Plaintiff.

17. DOES 3 through 20 are additional federal agents, transporting or custodial officers, affiants, investigators, or supervisors who participated in or prolonged Plaintiff's detention, supplied or approved false information, denied Plaintiff medical care, or failed to intervene despite having a realistic opportunity to do so.

18. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 20, inclusive, are unknown to Plaintiff, who therefore sue said Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believe, and thereon allege, that each of the DOE Defendants were, at all relevant times, an employee, agent, servant, or representative of Defendant UNITED STATES through the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") and/or Customs and Border Protections ("CBP"), and were acting within the course and scope of such employment, agency, or representation. Plaintiff further alleges that the acts and omissions of Defendants, including DOES 1 through 20, were a proximate cause of the injuries and damages sustained by Plaintiff as alleged herein.

19. At all times mentioned herein, each Defendant was responsible in some manner for the acts and occurrences alleged in this Complaint. Plaintiff's damages, as alleged herein, were proximately caused by the acts and omissions of each of the Defendants.

20. Defendants, the UNITED STATES and DOES 1 through 20, inclusive, are collectively referred to herein as "Defendants." Defendant DOES 1 through 20 (the "DOE AGENTS") are Federal agents.

21. At all relevant times, each Defendant was the agent, servant, employee, joint venturer, and/or co-conspirator of each other and every other Defendants, and in doing the acts alleged herein, was acting within the course and scope of such relationship and under color of law. In doing the things herein alleged, Defendants were acting under the color of law and within the course and scope of their duties of said alternative personality, capacity, identity, agency, representation and/or employment and were within the scope of their authority, whether actual or apparent.

## **FACTUAL ALLEGATIONS**

22. Plaintiff re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein against all Defendants.

23. Plaintiff CARY LOPEZ is a United States Citizen, of Latina descent, living in the City of Los Angeles in California. CARY LOPEZ was born in Los Angeles, California.

24. On or about June 8, 2025, at approximately 3:08 p.m., LOPEZ received a telephone call from her boyfriend, Brayan, who was working with another male individual at or near 4350 W. 120th Street, Hawthorne, California 90250. The location was an abandoned mall/private property worksite.

25. Brayan informed LOPEZ that ICE agents and/or Border Patrol agents in a white truck were roaming the area. Around approximately 3:21 p.m., LOPEZ received another call from Brayan stating that he and the other worker were being followed by ICE and/or Border Patrol agents. Brayan asked LOPEZ to open the gate so that he could drive the truck into the property.

26. LOPEZ stood at the private gate of the property to allow Brayan and the other worker to enter. At that time, agents arrived and blocked the truck by positioning their vehicles behind it.

27. LOPEZ was standing at or near the private gate and repeatedly told Brayan and the other worker not to open the truck doors because the agents did not have a warrant and were on private property.

28. The agents failed to identify themselves adequately. The agents attempted to force the truck doors open and attempted to break or break the truck windows. LOPEZ called the Hawthorne Police Department for help and reported that unidentified agents were trying to break the truck windows and were attempting to kidnap or unlawfully seize the occupants because the agents had not identified themselves and had not presented a warrant.

29. Hawthorne Police Department told LOPEZ that someone would be sent right away, but no one came to protect LOPEZ or intervene in the unlawful conduct.

30. While LOPEZ was on the phone and attempting to obtain assistance, one of the agents threatened LOPEZ by stating, "You wanna get killed?"

31. LOPEZ repeatedly told the agents that they needed a warrant. The agents repeatedly told LOPEZ to move out of the way. LOPEZ did not pose a threat to officer safety and was not committing any crime.

32. Despite LOPEZ being visibly nine months pregnant, one of the agents grabbed LOPEZ's arm, twisted her arm against the truck, pushed her body against the truck, and pressed or pushed her pregnant belly against the truck.

33. Defendants then detained and unlawfully arrested LOPEZ. Defendants placed chains under LOPEZ's pregnant belly and around her hands and legs. LOPEZ was shackled while nine months pregnant.

34. LOPEZ's cousin, Alberto Sandoval Alvarado, who was the manager of the property and had access to the location, attempted to help LOPEZ when she was being arrested. Alberto was also unlawfully arrested for alleged obstruction.

35. Defendants broke or shattered the truck windows and arrested Brayan and the other male worker. Upon information and belief, Brayan and/or the other worker were later deported.

36. LOPEZ was detained and confined for about 9 hours, from approximately 3:20 p.m. until approximately 11:30 p.m. that same day.

37. At no time did LOPEZ interfere with lawful law enforcement activity.

LOPEZ had not committed any offense, was not suspected of any criminal activity based on individualized facts, and was not a threat to officer safety or national security. LOPEZ was attempting to protect persons on private property, requested that agents identify themselves and present a warrant, and called local law enforcement for help.

38. Defendants lacked reasonable suspicion or probable cause to detain, restrain, or arrest LOPEZ. Nevertheless, Defendants used unreasonable and excessive force against LOPEZ while she was nine months pregnant.

39. As a direct and proximate result of Defendants' conduct, LOPEZ suffered physical pain and injuries, including pain to her arms, abdomen, and body, as well as severe emotional distress, fear, humiliation, and trauma. LOPEZ further alleges that the force, shackling, detention, and emotional distress caused her to go into premature labor and give birth prematurely.

40. LOPEZ continues to suffer extreme emotional distress. In or about December 2025, LOPEZ stated that she remained fearful of leaving or being outside too much because of anxiety she developed after the incident with immigration agents, including fear that someone would recognize her and try to harm her or her baby.

41. LOPEZ has been fearful to walk outside on her own and fearful to return to 4350 W. 120th Street in Hawthorne due to what happened to her on June 8, 2025.

42. The agents involved in the incident were employees and/or agents of ICE, CBP, and/or DHS. Plaintiff alleges that Defendants engaged in racial profiling and used threats, intimidation, and coercive conduct during the incident.

### A. DHS Adopted Policies to Further the United States' Directive to Increase Immigration Enforcement

43. DHS adopted three challenged policies as part of a broader directive from the White House and Border Czar Homan to increase immigration arrests and removals by raiding workplaces based on which industries tend to employ undocumented workers rather than a prior investigation to identify whether there's any reason to suspect that employees on a particular worksite are undocumented.

44. These directives are aimed at increasing the number of undocumented people arrested and removed from several hundred a day to at least 3,000 per day.

45. The stated goal is to deport one million people per year, which requires 2,739 arrests per day, not counting the citizens and other lawful residents who are mistakenly arrested.

46. The 3,000-arrests-per-day quota is the "minimum" goal.

47. "Arresting, you know, several hundred a day isn't enough. So yeah, we gotta vastly increase that," confirmed Border Czar Homan.[1]

48. The administration's directive to ICE's leadership was clear: "do what you need to do" to increase deportation numbers. The administration encouraged immigration officers to "push the envelope" and turn the "creativity knob up to 11"; "[i]f it involves handcuffs on wrists, it's probably worth pursuing."[2]

49. To meet the 3,000-daily-arrest quota, the United States has taken several steps that inform the policies challenged here, including: (1) increasing the number of immigration officers, in part by deputizing law-enforcement officers from other agencies; (2) increasing workplace enforcement; and (3) targeting people who work in certain industries and fit a generalized demographic profile rather than conducting targeted investigations to find people who might be violating immigration laws.

**1. Turning Federal Law Enforcement Into Immigration Enforcement**

50. On inauguration day, President Trump signed Executive Order 14159 ("Protecting the American People Against Invasion"), which instructs the Attorney General, DHS, ICE, CBP, U.S. Citizenship and Immigration Services (CIS), and HSI

---

[1] Cam Smith, *Vt. Officials respond to Trump administration's 'sanctuary city' threats*, WCAX3 (May 30, 2025), https://www.wcax.com/2025/05/30/vt-officials-respond-trump-administrations-sanctuary-city-threats/; Transcript of interview with White House Border Czar Tom Homan, *State of the Union*, CNN (aired July 13, 2025), https://transcripts.cnn.com/show/sotu/date/2025-07-13/segment/01.

[2] Elizabeth Findell, *et al.*, *The White House Marching Orders That Sparked the L.A. Migrant Crackdown*, Wall St. J. (June 9, 2025), https://www.wsj.com/us-news/protests-los-angeles-immigrants-trump-f5089877.

to prioritize immigration arrests and deportations and for the Attorney General and Secretary of Homeland Security to jointly establish Homeland Security Task Forces nationwide.

51. Executive Order 14159 also instructs the Secretary of Homeland Security to (1) make HSI's "primary mission" enforcement and removal and (2) take all appropriate action to enable the Director of ICE, the Commissioner of CBP, and the Director of CIS to set priorities that ensure enforcement and removal.

52. The Secretary of Homeland Security has statutory authority to "confer or impose" on any federal employee the power to investigate and arrest illegal immigrants. See 8 U.S.C. § 1103(a); without an arrest warrant signed by a Federal judge.

53. On January 23, 2025, the Acting Secretary exercised that power to authorize DOJ law-enforcement officers working for USMS, DEA, ATF, and the Bureau of Prisons to serve as immigration officers.[3]

54. Weeks later, Secretary Noem began deputizing law-enforcement officers from other federal agencies to serve as immigration officers.[4]

55. By August 2025, over 14,500 federal law-enforcement officers, another 1,400 non-law-enforcement federal officers, and about 10,000 state and local law-enforcement officers are now deputized to serve as immigration officers.[5]

---

[3] Press Release, *Statement from a DHS Spokesperson on Directive Expanding Immigration Law Enforcement to Some Department of Justice Officials*, Dep't of Homeland Sec. (Jan. 23, 2025), https://www.dhs.gov/news/2025/01/23/statement-dhs-spokesperson-directive-expanding-immigration-law-enforcement.

[4] Press Release, *ICYMI: Secretary Noem Deputized State Department Officials as Immigration Officers*, Dep't of Homeland Sec. (Feb. 20, 2025), https://www.dhs.gov/news/2025/02/20/secretary-noem-deputized-state-department-officials-immigration-officers; Vittoria Elliot, *State Department Agents Are Now Working With ICE on Immigration*, WIRED (Sept. 4, 2025), https://www.wired.com/story/state-department-dss-agents-ice-immigration/

[5] David J. Bier, *ICE Has Diverted Over 25,000 Officers from Their Jobs*, Cato Inst. (Sept. 3, 2025), https://www.cato.org/blog/ice-has-diverted-over-25000-officers-their-jobs.

**2. Prioritizing Random Arrest Over Targeted Enforcement**

56. Until this year, immigration officers planning to search for and seize undocumented immigrants have had to submit a form to a supervisor identifying their target's name, appearance, known addresses, employment, immigration history, and criminal history.

57. But this year, DHS eliminated the policy that required immigration officers to identify their targets in advance; and without an arrest warrant signed by a Federal judge.

58. The policy became useless, according to former immigration officials, because DHS no longer requires officers to know their targets before they go out to make arrests.[6]

59. Rather than relying on targeted investigations, Border Czar Homan and Secretary Noem directed immigration officers to go on patrols to search for people who work in certain industries and fit a generalized demographic profile of an undocumented worker in that industry.

60. DHS has developed a general demographic profile of what undocumented people tend to look like in an industry or location.

61. A top CBP official, for instance, explained that officers are detaining people based on their "location" and "how they look."[7] Racial profiling was permitted by all Defendants.

**B. Operation "Return to Sender"**

62. Upon information and belief, a lawsuit filed in the Fresno Division of the

---

[6] Julia Ainsley et al., *Under Trump administration, ICE scraps paperwork officers once had to do before immigration arrests*, NBC News (Sept. 9, 2025), https://www.nbcnews.com/politics/national-security/trump-administration-ice-scraps-paperwork-officers-immigration-arrests-rcna229407.

[7] Chip Mitchell, *Feds march into Chicago; top border agent says people are arrested based on 'how they look,'* Chicago Sun Times (Sept. 28, 2025), https://chicago.suntimes.com/immigration/2025/09/28/ice-agents-spotted-downtown-on-michigan-avenue-along-chicago-river.

Eastern District of California arose out of an enforcement operation referred to as "Operation Return to Sender," which was conducted in Kern County and surrounding areas and involved the deployment of approximately sixty federal agents from the El Centro Sector under the direction of Gregory Bovino.[8]

63. The operation involved stops, detentions, and arrests of individuals in predominantly Latino communities, including farmworkers and day laborers, many of whom were not suspected of criminal activity.[9]

64. The allegations in that action included that individuals were detained without individualized suspicion and that enforcement actions were carried out in a manner that disproportionately targeted persons based on race, ethnicity, and/or perceived immigration status, and Federal agents could undertake "racial profiling." Moreover, Federal agents were not required to have an arrest warrant signed by a Federal Judge before arresting the thousands that were arrested.

65. Upon information and belief, the conduct at issue in that action reflects a pattern, practice, or custom of unlawful detention practices and inadequate safeguards to prevent the detention of United States citizens and other individuals without lawful basis.

66. Defendants, were on notice of such conduct and the risk of constitutional violations arising from similar enforcement practices, yet failed to take reasonable steps to prevent such violations, including the conduct alleged in this case.

67. LOPEZ timely submitted a claim for damages to the United States Department of Homeland Security, U.S. Customs and Border Protection, U.S. Immigration and Customs Enforcement, and other appropriate federal agencies. Although the claim was not expressly rejected, it is deemed denied by operation of law because Defendants failed to make a final disposition of the claim within six (6) months

---

[8] *United Farm Workers v. Kristi Noem*, Case No. 1:25-cv-00246-JLT-CDB.

[9] *Id.*

after it was filed. 28 U.S.C. § 2675(a).

## FIRST CLAIM FOR RELIEF

**False Arrest/False Imprisonment**

(By Plaintiff against UNITED STATES)

68. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

69. Defendant, UNITED STATES, and their agents, while acting within the course and scope of their employment, intentionally deprived Plaintiff of her freedom of movement by use of force, threats of force, chains and unreasonable duress.

70. The UNITED STATES detained, restrained, and arrested Plaintiff without reasonable suspicion, probable cause, or any lawful justification.

71. Plaintiff did not consent to the detention, restraint, or arrest.

72. On or about June 8, 2025, in Hawthorne, California, the UNITED STATES, by and through their agents approached and seized Plaintiff while she was standing at a private gate of private property where her boyfriend and cousin were working. Plaintiff was not committing any crime and had repeatedly told agents they needed a warrant.

73. Without lawful justification, the UNITED STATES, by and through their agents, grabbed Plaintiff, twisted her arm against a truck, pushed her body and pregnant belly against the truck, and shackled her with chains under her pregnant belly and around her hands and legs.

74. The UNITED STATES, by and through their agents, detained Plaintiff from approximately 3:20 p.m. until approximately 11:00 p.m. despite her status as a United States citizen, her obvious pregnancy, and the lack of any lawful basis for detention.

75. At all times, Plaintiff had committed no crime, was not suspected of committing any crime, and the UNITED STATES, by and through their agents, lacked any legal basis to detain or arrest her. Defendant's conduct in detaining, restraining,

and arresting Plaintiff was unlawful and without privilege or consent.

76. The UNITED STATES' conduct was a substantial factor in causing harm to Plaintiff

77. As a direct and proximate result of the UNITED STATES' actions, Plaintiff suffered loss of liberty, physical injury, emotional distress, premature labor and premature birth, humiliation, and other damages.

78. The UNITED STATES is liable for Plaintiff's injuries because they were integral participants in the unlawful detention and arrest and/or failed to intervene to prevent the violations described herein.

79. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

## SECOND CLAIM FOR RELIEF

### Assault and Battery

(By Plaintiff against UNITED STATES)

80. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

81. Defendant, the UNITED STATES, by and through their agents, while acting within the course and scope of their employment, intentionally and unlawfully used force against Plaintiff.

82. The UNITED STATES, by and through their agents, intentionally and unlawfully used force against Plaintiff while she was nine months pregnant.

83. Defendant's conduct included grabbing and pulling Plaintiff's arms, twisting her arm against a truck, pushing her body and pregnant belly against the truck, shackling her with chains under her belly and around her hands and legs, and detaining her for several hours.

84. The force used by the UNITED STATES, by and through their agents, was harmful and offensive, was carried out without Plaintiff's consent, and was excessive and unreasonable under the circumstances, as Plaintiff was not committing

any crime, was not resisting, and posed no threat to officer safety.

85. At all times, Plaintiff had committed no crime, was not suspected of committing any crime, and Defendants lacked any lawful basis to use force against her.

86. The force used by the UNITED STATES, by and through their agents was unreasonable and excessive under the circumstances, including in light of the fact that Plaintiff was not committing any crime, did not pose a threat.

87. As a direct and proximate result of the UNITED STATES' conduct, Plaintiff suffered physical injuries, premature labor and premature birth, emotional distress, humiliation, and psychological trauma.

88. UNITED STATES, either directly participated in the unlawful use of force, were integral participants in the conduct, and/or failed to intervene to prevent the unlawful use of force despite having a realistic opportunity to do so.

89. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

## THIRD CLAIM FOR RELIEF

**Intentional Infliction of Emotional Distress**

(By Plaintiff against UNITED STATES)

90. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

91. Defendant UNITED STATES, by and through their agents, engaged in extreme and outrageous conduct toward Plaintiff.

92. UNITED STATES' conduct included, but was not limited to: arriving at and entering private property at or near 4350 W. 120th Street, Hawthorne, California; failing to adequately identify themselves and failing to present a warrant; blocking the work truck by positioning their vehicles behind it; attempting to force open the truck doors and breaking and/or shattering the truck windows; threatening Plaintiff by stating, "You wanna get killed?"; grabbing Plaintiff's arm, twisting it, pushing Plaintiff's body against the truck, and pressing Plaintiff's visibly nine-month-pregnant

abdomen against the truck; unlawfully detaining and arresting Plaintiff without reasonable suspicion or probable cause; placing Plaintiff in chains and shackles, including chains placed under Plaintiff's pregnant belly and restraints around her hands and legs; and detaining and confining Plaintiff for several hours, from approximately 3:20 p.m. until approximately 11:00 p.m. on June 8, 2025, despite Plaintiff's repeated statements that she was not committing any crime, posed no threat, and was requesting that the UNITED STATES, by and through their agents, identify themselves and present a warrant.

93. The UNITED STATES knew, or should have known, that their conduct would cause Plaintiff severe emotional distress, particularly given that Plaintiff is a United States citizen born in Los Angeles, California. Plaintiff was not committing any crime, was not suspected of criminal activity based on individualized facts, and posed no threat to officer safety or national security. Plaintiff repeatedly requested that the UNITED STATES, by and through their agents, identify themselves and present a warrant and sought assistance from local law enforcement. Plaintiff was visibly nine months pregnant when the UNITED STATES, by and through their agents used force against her, shackled her with chains placed under her pregnant belly, and detained her for hours. The UNITED STATES' actions caused Plaintiff physical pain, fear, humiliation, trauma, and ongoing anxiety, including fear of leaving her home and fear of returning to the location of the incident, and further caused Plaintiff to go into premature labor and give birth prematurely.

94. The UNITED STATES' conduct was intentional and/or reckless, and was carried out with a conscious disregard for Plaintiff's rights and well-being.

95. The conduct described herein was so extreme and outrageous as to exceed all bounds of that usually tolerated in a civilized society.

96. As a direct and proximate result of the UNITED STATES' conduct, Plaintiff suffered severe emotional distress, including but not limited to humiliation, anxiety, fear, shock, and mental anguish, arising from the traumatic experience of

being wrongfully detained and treated as a criminal.

97. Plaintiff also suffered physical manifestations of emotional distress, including pain, discomfort, premature labor, and bodily harm associated with the force used during her detention and arrest.

98. The UNITED STATES'' conduct was a substantial factor in causing Plaintiff's injuries.

99. The UNITED STATES is liable for Plaintiff's injuries because they directly participated in the conduct, were integral participants, and/or failed to intervene to prevent the wrongful acts; and defendant inflicted the intentional infliction of emotional distress.

100. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

## FOURTH CLAIM FOR RELIEF

### Violation of Civil Rights

### California Civil Code § 53.8

(By Plaintiff against all DOES 1-20)

101. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

102. California Civil Code section 53.8 imposes liability upon every natural person who, under color of any federal, state, or other law, subjects, or causes to be subjected, any person within California to the deprivation of rights, privileges, or immunities secured by the United States Constitution

103. This cause of action is brought pursuant to the United States Constitution for violation of Plaintiff's Civil rights under the Fourth and Fifth Amendments to the United States Constitution, including the right to be free from unreasonable seizures and the right to liberty without due process of law.

104. Upon information and belief, Defendants, acting under color of federal authority, intentionally, recklessly, and/or with deliberate indifference to Plaintiff's

clearly established constitutional and civil rights, engaged in unlawful acts and omissions, including but not limited to:

a. detaining, seizing, restraining, and arresting Plaintiff at or near 4350 W. 120th Street, Hawthorne, California, without reasonable suspicion or probable cause;

b. failing to adequately identify themselves and/or their authority and failing to present a warrant while on private property;

c. blocking and seizing the work truck by positioning Defendants' vehicles behind it and preventing the occupants from leaving;

d. attempting to force entry into the truck by trying to open the doors and breaking and/or shattering the truck windows;

e. threatening Plaintiff, including by stating, "You wanna get killed?";

f. using unnecessary and excessive force against Plaintiff, including grabbing Plaintiff's arm, twisting it, pushing Plaintiff's body against the truck, and pressing Plaintiff's visibly nine-month-pregnant abdomen against the truck;

g. placing Plaintiff in chains and shackles while she was nine months pregnant, including placing chains under Plaintiff's pregnant belly and restraining Plaintiff's hands and legs;

h. continuing to detain and confine Plaintiff for hours, from approximately 3:20 p.m. until approximately 11:00 p.m. on June 8, 2025, despite the absence of any lawful basis;

i. failing to recognize and/or disregarding that Plaintiff posed no threat and was not committing any crime, and that Plaintiff was attempting to request identification, a warrant, and assistance from local law enforcement;

j. arresting Plaintiff for alleged "obstruction" or similar conduct based on Plaintiff's verbal requests for a warrant and identification and her

efforts to seek police assistance, rather than any unlawful act;

k. failing to provide reasonable accommodations and care given Plaintiff's obvious medical condition (nine months pregnant) and failing to timely respond to Plaintiff's need for medical attention following the use of force, shackling, and prolonged detention;

l. failing to implement or follow reasonable procedures for lawful detention, investigation, and use of force, including procedures governing operations on private property and warrant requirements;

m. failing to adequately train, supervise, and discipline agents regarding lawful detention, warrant requirements, use of force (including force against pregnant individuals), shackling/restraints, and detainee medical needs; and

n. failing to properly communicate and coordinate information among agents during the incident, including regarding the basis (if any) for detention/arrest, the decision to use force, and the decision to shackle and detain Plaintiff for hours.

105. DOES 1 through 20, acting under color of federal authority, subjected or caused Plaintiff to be subjected to deprivations of her rights under the Fourth and Fifth Amendments to the United States Constitution.

106. Upon information and belief, DOE 1 entered a posted private business property without a warrant, consent, exigent circumstances, or other lawful justification; detained Plaintiff forcefully by twisting Plaintiff's arm behind her back; stated words to the effect of "You wanna get killed?"; pressed or pushed her pregnant stomach against the truck; and initiated or authorized Plaintiff's detention and arrest despite the absence of reasonable suspicion or probable cause.

107. Upon information and belief, DOE 2 physically seized Plaintiff, prevented her from leaving, grabbed her, and participated in pressing her pregnant stomach against the truck, and restrained her, even though Plaintiff was not resisting, posed no

threat, and had committed no crime.

108. Upon information and belief, DOES 3 through 20, inclusive, caused initiated, supplied, adopted, or approved materially false information used to support Plaintiff's continued detention and a criminal complaint alleging a violation of 18 U.S.C. section 111, despite knowing or having reason to know that Plaintiff had not assaulted, resisted, or impeded any federal officer. These Defendants learned that Plaintiff claimed United States citizenship and possessed documentation capable of verifying her identity but failed to investigate that information and caused, approved, or knowingly permitted Plaintiff's detention to continue after any arguable justification had dissipated. DOES 3 through 20 further personally directed, approved, or knowingly permitted the unlaw ful detention, arrest, use of force, denial of medical care, and continued confinement alleged herein. They knew of the constitutional violations and had a realistic opportunity to prevent, stop, or mitigate them but failed to intervene to prevent the constitutional violations of Plaintiff herein.

109. DOES 1 through 20 were present during, participated in, or learned of material portions of Plaintiff's detention and arrest. Each responsible DOE Defendant heard or was informed that Plaintiff was a United States citizen, had committed no crime, possessed proof of citizenship, and was 9 months pregnant.

110. The foregoing conduct deprived Plaintiff of rights secured by the Constitution and laws of the United States, including but not limited to the right to be free from unreasonable seizures, excessive force, unlawful detention, and deprivation of liberty without due process of law under the Fourth and Fifth Amendments.

111. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered physical pain, bodily injury, emotional distress, humiliation, embarrassment, anxiety, premature labor, and other damages according to proof.

112. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

113. Plaintiff seeks compensatory damages, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## FIFTH CLAIM FOR RELIEF

**Conspiracy to Commit Civil Rights Violations – 42 U.S.C. § 1985(3)**

(By Plaintiff against DOES 1-20)

114. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

115. This cause of action is brought pursuant to the United States Constitution for conspiracy to violate Plaintiff's rights under the Fourth and Fifth Amendments to the United States Constitution, including the right to be free from unreasonable seizures and the right to liberty without due process of law. A conspiracy claim under *Bivens* is actionable where there is an express or implied agreement among defendants to deprive a person of constitutional rights, and an actual deprivation resulting from that agreement.

116. Defendants, DOES 1 through 20, inclusive, reached an express and/or implied agreement among themselves to detain, restrain, and subject Plaintiff to unlawful treatment without reasonable suspicion or probable cause.

117. Upon information and belief, before entering the abandoned mall, DOE 1 through 20 agreed and formed a plan to enter the visibly private, nonpublic business property without a warrant, consent, exigent circumstances, or other lawful justification and to detain and arrest individuals they perceived to be Mexican or unlawfully present in the United States, without individualized reasonable suspicion or probable cause. In furtherance of that agreement, the agents entered the property through a gate marked with "Private Property" and "No Trespassing" signs.

118. Upon information and belief, DOE 1 further manifested the conspiracy by detaining Plaintiff forcefully by twisting Plaintiff's arm behind her back; stating words to the effect of "You wanna get killed?"; pressing or pushing her pregnant stomach against the truck; and initiating or authorizing Plaintiff's detention and arrest despite the absence of reasonable suspicion or probable cause.

119. Upon information and belief, DOE 2 manifested agreement with the

conspiracy and committed overt acts in furtherance of it by physically seizing Plaintiff, preventing her from leaving, grabbing her, participating in pressing her pregnant stomach against the truck, and restraining her.

120. Upon information and belief, DOES 3 through 20, inclusive, manifested their agreement with the conspiracy and committed overt acts in furtherance thereof by causing, supplying, adopting, or approving materially false information used to support Plaintiff's continued detention and the filing of a criminal complaint alleging a violation of 18 U.S.C section 111; disregarding readily available evidence of Plaintiff's identity and United States citizenship; and directing, approving, participating in, or knowingly permitting Plaintiff's unlawful detention, arrest, use of force, denial of medical care, and continued confinement after any arguable justification had dissipated.

121. Each DOE Defendant knew the essential nature and discriminatory purpose of the common plan and intended to assist, facilitate, or further its accomplishment. The DOE Defendants' coordinated actions were not merely parallel or independent decisions.

122. In furtherance of their agreement, Defendants acted in concert to block the truck, attempt to force open or break the truck windows, order Plaintiff to move, threaten Plaintiff, grab Plaintiff, twist her arm, push her pregnant belly into the truck, shackle her with chains, and detain her for several hours.

123. Defendants knew or reasonably should have known that Plaintiff was a United States citizen who had committed no crime and posed no threat, yet nonetheless agreed to continue Plaintiff's detention and restraint without lawful justification.

124. Upon information and belief, Defendant's actions were motivated, in whole or in part, by Plaintiff's race, ethnicity, and/or perceived national origin, and not by any lawful or objective criteria.

125. Defendants' conduct constituted impermissible racial profiling and selective enforcement in violation of the equal protection component of the Fifth

Amendment, in that Defendants targeted Plaintiff based on her race/ethnicity, appearance, and/or perceived immigration status, rather than on any individualized, objective facts establishing reasonable suspicion or probable cause that Plaintiff had committed any crime.

126. Defendants' decision to detain and arrest Plaintiff, and to continue detaining her for hours, despite Plaintiff's repeated statements that she was not committing any crime, her requests that Defendants identify themselves and present a warrant, and the absence of any lawful basis to seize her, further demonstrates that Defendants' actions were not motivated by legitimate law enforcement objectives, but were instead driven, at least in part, by discriminatory intent and/or an unlawful purpose to target individuals perceived to be immigrants or of Latino descent.

127. The coordinated actions of Defendants were not the result of independent decision-making, but rather were undertaken pursuant to a shared understanding and agreement to deprive Plaintiff of her constitutional rights.

128. As a direct and proximate result of this agreement and the acts taken in furtherance thereof, Plaintiff was subjected to an unlawful seizure, excessive force, and deprivation of liberty and equal protection without due process of law.

129. The conduct of each individual Defendants was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages.

130. Defendants are liable for the constitutional violations alleged herein because they were integral participants in the conspiracy and resulting unlawful conduct and/or failed to intervene to prevent the violations despite having a realistic opportunity to do so.

131. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

132. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## SIXTH CLAIM FOR RELIEF

**Fourth Amendment—Detention and Arrest**

**California Civil Code § 53.8**

(By Plaintiff against DOES 1-20)

133. Plaintiff re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein.

134. The Fourth Amendment protects individuals against unreasonable searches and seizures, including detention without reasonable suspicion and arrest without probable cause, as well as the use of excessive force during a seizure.

135. Defendants, DOES 1 through 20, inclusive, acting under color of federal law, detained, restrained, and seized Plaintiff without reasonable suspicion or probable cause, thereby subjecting Plaintiff to an unlawful detention and arrest in violation of the Fourth Amendment.

136. Upon information and belief, DOE 1 physically seized Plaintiff, prevented her from leaving, and grabbed and restrained her, thereby effectuating an investigatory detention without reasonable suspicion.

137. DOE 1 continued to restrain Plaintiff after Plaintiff stated that she was a United States citizen, had committed no crime, and possessed documentation verifying her identity and citizenship.

138. Upon information and belief, DOE 2 assisted in restraining and handcuffing Plaintiff and prevented her from leaving the scene.

139. DOE 2 knew that Plaintiff had approached with her hands raised, was not attempting to flee, posed no threat, and had not engaged in conduct providing reasonable suspicion or probable cause.

140. Upon information and belief, DOES 3 through 20, inclusive, personally participated in, directed, approved, or knowingly permitted Plaintiff's detention, arrest, transportation, and continued confinement without reasonable suspicion or probable cause. These Defendants disregarded readily available evidence of Plaintiff's identity

and United States citizenship; caused, supplied, adopted, or approved materially false information used to justify her continued detention and arrest; and caused or knowingly permitted Plaintiff to remain detained after any arguable lawful justification had dissipated. To the extent they did not directly participate, these Defendants knew that Plaintiff was being unlawfully detained and arrested, had a realistic opportunity to intervene, and failed to do so.

141. At all relevant times, Defendants lacked reasonable suspicion or probable cause to detain or arrest Plaintiff. Plaintiff had committed no crime, was not suspected of any criminal activity based on individualized facts, and was standing at or near the gate of private property while nine months pregnant.

142. Defendants continued to detain Plaintiff despite the absence of any lawful basis, despite her obvious pregnancy, and despite the fact that she had called local police for assistance.

143. Defendants further violated Plaintiff's Fourth Amendment rights by subjecting her to excessive and unreasonable force, including grabbing Plaintiff's arm, twisting it, pushing Plaintiff's body against the truck, and pressing Plaintiff's visibly nine-month-pregnant abdomen against the truck, and then arresting and restraining Plaintiff in chains and shackles (including chains placed under Plaintiff's pregnant belly and restraints around her hands and legs), causing physical pain and injury.

144. Defendants' conduct, including the unlawful detention, use of significant physical force, continued restraint, and confinement in a custodial setting despite the absence of any lawful basis for the seizure, was objectively unreasonable under the circumstances and not justified by any legitimate law enforcement need.

145. Each Defendant is liable for these violations because they directly participated in the unlawful conduct, were integral participants, and/or failed to intervene to prevent the violations despite having a realistic opportunity to do so.

146. Upon information and belief, Defendants acting under color of federal law, implemented, maintained, and/or permitted policies, practices, or customs that

directly resulted in the unlawful seizure, prolonged detention, and use of excessive force against Plaintiff in violation of the Fourth Amendment.

147. These policies, practices, and customs included, but were not limited to: (a) detaining, seizing, and arresting individuals on private property without reasonable suspicion or probable cause, including based on perceived immigration status rather than individualized facts; (b) failing to implement and follow adequate procedures to ensure agents identify themselves and obtain and/or present a warrant when required before attempting to seize individuals on private property; (c) failing to implement adequate procedures to promptly investigate and document the lawful basis (if any) for detention and arrest, including when individuals assert they are United States citizens and request verification; and (d) permitting the use of unnecessary and excessive force and restraints, including force against visibly pregnant individuals and the use of chains and shackles (including chains placed under a pregnant belly) and prolonged restraint/detention, absent any legitimate law enforcement justification.

148. Defendants knew or reasonably should have known that such policies, practices, and failures would lead to violations of the Fourth Amendment, including unlawful seizures and excessive force, yet failed to take reasonable steps to prevent such violations.

149. As a direct and proximate result of Defendants' actions, Plaintiff suffered physical injury, pain, emotional distress, humiliation, and other damages.

150. Defendants' conduct was willful, wanton, reckless, and in conscious disregard of Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages against the individual Defendants.

151. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

152. Plaintiff further seeks punitive damages against the individual DOE Defendants.

//

**SEVENTH CLAIM FOR RELIEF**

**Fourth Amendment—Excessive Force**

**California Civil Code § 53.8**

(By Plaintiff against DOES 1 and 2)

153. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

154. Defendants, DOES 1 and 2, inclusive, used force against Plaintiff during her detention and arrest at or near 4350 W. 120th Street in Hawthorne, California.

155. The force used by Defendants was objectively unreasonable under the circumstances. Plaintiff was compliant at all times, posed no threat to the safety of any officer or others, was not attempting to flee, and was not suspected of committing any crime.

156. Notwithstanding the absence of any legitimate law enforcement need, Defendants used significant physical force against Plaintiff, including grabbing Plaintiff's arm, twisting it, pushing Plaintiff's body against the truck, and pressing Plaintiff's visibly nine-month-pregnant abdomen against the truck, and then detaining and arresting Plaintiff, placing Plaintiff in chains and shackles (including chains placed under Plaintiff's pregnant belly and restraints around her hands and legs), and confining Plaintiff for several hours.

157. Upon information and belief, DOE 1 grabbed Plaintiff, physically restrained her, and pressed or pushed her pregnant stomach against the truck.

158. DOE 1 used substantial physical force even though Plaintiff's hands were visible, Plaintiff was not resisting, and Plaintiff posed no immediate threat.

159. Upon information and belief, DOE 2 maintained or assisted in maintaining the painful restraint after Plaintiff had been subdued and any conceivable need for force had ended.

160. DOE 2 used or assisted in using force against Plaintiff despite knowing that Plaintiff had committed no crime, was not resisting, and posed no threat.

161. The force used against Plaintiff caused physical pain and injury, including pain and injuries to Plaintiff's arms, abdomen, and body, as well as bruising, soreness, and significant emotional distress, fear, humiliation, and trauma. Plaintiff further alleges that the force, shackling, and detention caused her to go into premature labor and give birth prematurely.

162. Defendants' use of force was unnecessary, excessive, and disproportionate to any perceived need, and was not justified by any legitimate governmental interest, particularly where Plaintiff was not committing any crime, was not resisting, and posed no threat to officer safety.

163. The force used against Plaintiff was part of, and exacerbated by, an unlawful detention, further rendering the use of force unreasonable under the Fourth Amendment.

164. Each individual Defendant is liable for the use of excessive force because they directly participated in the conduct, were integral participants, and/or failed to intervene to prevent the unlawful use of force despite having a realistic opportunity to do so.

165. As a direct and proximate result of Defendant's actions, Plaintiff suffered physical injury, pain, emotional distress, humiliation, premature labor, and other damages.

166. The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages

167. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

168. Plaintiff further seeks punitive damages against the individual DOE Defendants.

//

//

**<u>EIGHTH CLAIM FOR RELIEF</u>**

**Fifth Amendment - Denial of Liberty Without Due Process of Law**

**<u>California Civil Code § 53.8</u>**

(By Plaintiff against DOES 1-20)

169. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

170. The Due Process Clause of the Fifth Amendment provides that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend.

171. Defendants, including DOES 1 and 2, inclusive, acting under color of federal law, deprived Plaintiff of protected liberty and property interests without due process of law.

172. Defendants deprived Plaintiff of her liberty by unlawfully detaining, seizing, and restraining her at or near 4350 W. 120th Street, Hawthorne, California, on June 8, 2025, without probable cause, reasonable suspicion, or any lawful justification.

173. Upon information and belief, DOE 1 could clearly see that Plaintiff was pregnant but continued to physically restrain and transport her without taking reasonable care to avoid pressure on her stomach or otherwise account for her physical well-being. Despite the risks created by the forceful detention, DOE 1 did not request medical assistance, seek a medical evaluation, or take other reasonable measures to protect Plaintiff and her unborn child.

174. Upon information and belief, DOE 2 was present, mentioned Plaintiff's pregnancy multiple times, and knew of her condition while continuing to forcefully restrain her. DOE 2 did not take reasonable measures to reduce the force used or address the risks that the detention posed to Plaintiff and her unborn child.

175. Upon information and belief, DOES 3 through 20, inclusive, personally participated in, directed, approved, or knowingly permitted Plaintiff's continued detention and confinement despite knowing that Plaintiff claimed United States

citizenship, possessed documentation verifying her identity and citizenship, and had committed no crime. These Defendants disregarded or failed to disclose readily available exculpatory evidence; caused, supplied, adopted, or approved materially false information used to prolong Plaintiff's detention and support the criminal complaint against her; and failed to take reasonable steps to secure his release after any lawful basis for his confinement had dissipated, thereby depriving Plaintiff of her liberty without due process of law.

176. During this detention, Defendants restricted Plaintiff's freedom of movement by blocking the work truck with their vehicles, physically seizing Plaintiff, grabbing and twisting Plaintiff's arm, pushing Plaintiff's body against the truck and pressing Plaintiff's visibly nine-month-pregnant abdomen against the truck, placing Plaintiff under arrest, placing Plaintiff in chains and shackles (including chains placed under Plaintiff's pregnant belly and restraints around her hands and legs), and confining Plaintiff for several hours, from approximately 3:20 p.m. until approximately 11:00 p.m., preventing her from leaving despite her compliance and the absence of any lawful basis.

177. Defendants' decision to continue detaining Plaintiff despite Plaintiff's repeated statements that she was not committing any crime, her requests that Defendants identify themselves and present a warrant, and her efforts to obtain assistance from local law enforcement, demonstrates that the detention was arbitrary, unreasonable, and not based on any legitimate law enforcement objective.

178. Defendants knew, or reasonably should have known, that Plaintiff's continued detention was baseless, yet failed to release her.

179. Upon information and belief, Defendants lacked adequate procedures, training, or safeguards to ensure that individuals are promptly released once it becomes apparent that there is no lawful basis for detention.

180. Defendant's conduct was arbitrary, conscience-shocking, and undertaken without any legitimate governmental interest.

181. Defendants acted with deliberate indifference to Plaintiff's rights by detaining and continuing to detain Plaintiff despite the absence of any lawful basis and despite Plaintiff's repeated statements and other readily available indicia that she was a United States citizen and not committing any crime, and despite Plaintiff's repeated requests that Defendants identify themselves and present a warrant and/or verify the basis for their actions.

182. Upon information and belief, Defendant's actions were motivated, in whole or in part, by Plaintiff's race, ethnicity, and/or perceived national origin, further rendering the deprivation of Plaintiff's liberty and property unlawful.

183. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of liberty, emotional distress, humiliation, and other damages.

184. The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages for the conduct of Does 1- through 20.

185. Defendants are liable for the violations of Plaintiff's Fifth Amendment rights because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations.

186. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

187. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## NINTH CLAIM FOR RELIEF

**Fifth Amendment - Denial of Medical Care**

**California Civil Code § 53.8**

(By Plaintiff against DOES 1-20)

188. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

189. Defendants, including DOES 1 and 2, inclusive, acting under color of

federal law, deprived Plaintiff of her rights under the Fifth Amendment by failing to provide and timely obtain necessary medical care while Plaintiff was in custody, despite Plaintiff's obvious pregnancy, the force used against her body and pregnant belly, and the substantial risk of harm to Plaintiff and her unborn child, thereby acting with deliberate indifference to Plaintiff's serious medical needs.

190. While in Defendants' custody, Plaintiff exhibited obvious signs of physical injury and medical distress, including pain to her arms, abdomen, and body, and visible distress following Defendants' use of force against her while she was visibly nine months pregnant, including pushing her pregnant belly against the truck and placing her in chains and shackles (including chains placed under her pregnant belly).

191. Plaintiff requested medical attention from Defendants during and/or after the use of force, shackling, and detention.

192. Despite Plaintiff's requests and the apparent need for medical care given her condition and the force used, Defendants failed to provide or timely obtain appropriate medical evaluation and treatment for Plaintiff.

193. Upon information and belief, DOE 1 could clearly see that Plaintiff was pregnant but continued physically restraining and transporting Plaintiff without regard to her pregnant stomach or her physical or mental well-being.

194. DOE 1 failed to ask for medical assistance, request a medical evaluation, or take other reasonable measures to ensure the safety of Plaintiff and her unborn baby from the substantial risks created by forcefully detaining her.

195. Upon information and belief, DOE 2 was present and mentioned Plaintiff's pregnant condition multiple times, but continued to forcefully restrain her and ignore other reasonable measures that should have been taken to minimize the harm done to Plaintiff and her unborn child.

196. DOE 2 failed to take reasonable measures to address Plaintiff's pregnancy condition despite knowing that stress and unnecessary force created a substantial risk

of harm to Plaintiff and her unborn child.

197. Upon information and belief, DOES 3 through 20, knew that Plaintiff was 9 months pregnant, that her due date was soon, and that excessive stress or harm could cause a premature birth or harm to Plaintiff's unborn child. These Defendants nevertheless personally disregarded those risks or knowingly permitted harm to come to Plaintiff; failed to take precautions to ensure no harm came to Plaintiff or Plaintiff's unborn child; failed to request a timely medical evaluation or obtain necessary treatment; transported, detained, or continued confining Plaintiff, causing unnecessary stress and harm to Plaintiff and her unborn child despite having reasonable opportunity to not inflict harm or cause distress.

198. Defendants knew, or reasonably should have known, that Plaintiff faced a substantial risk of harm if her medical needs were not addressed, particularly given that she was nine months pregnant and had been subjected to force, restraints, and prolonged detention, yet consciously disregarded that risk.

199. Defendants' failure to provide medical care was objectively unreasonable under the circumstances and constituted deliberate indifference to Plaintiff's serious medical needs in violation of the Fifth Amendment.

200. As a direct and proximate result of Defendants' conduct, Plaintiff suffered unnecessary pain, emotional distress, fear, humiliation, and trauma, and Plaintiff further alleges that the force, shackling, detention, and resulting distress caused her to go into premature labor and give birth prematurely.

201. The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's Fifth Amendment rights, including deliberate indifference to Plaintiff's serious medical needs, thereby entitling Plaintiff to an award of punitive damages.

202. Defendants are liable for the violations of Plaintiff's Fifth Amendment rights because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the denial of necessary medical care.

203. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

204. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## **TENTH CLAIM FOR RELIEF**

### **Fourth Amendment—Detention and Arrest**

### ***Bivens***

(By Plaintiff against DOES 1-20)

205. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

206. This claim is brought against DOES 1 through 20 in their individual capacities under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388* (1971), for violations of Plaintiff's rights under the Fourth Amendment to the United States Constitution.

207. At all relevant times, DOES 1 through 20 were federal officers acting under color of federal authority. The Fourth Amendment protected Plaintiff against detention without reasonable suspicion and arrest without probable cause.

208. Upon information and belief, DOE 1 initiated or authorized Plaintiff's detention and arrest despite the absence of reasonable suspicion or probable cause. DOE 1 twisted Plaintiff's arm behind her back, stated words to the effect of "You wanna get killed?", and pressed or pushed her pregnant stomach against a truck while detaining her.

209. Upon information and belief, DOE 2 physically seized Plaintiff, grabbed her, prevented her from leaving, and participated in restraining her and pressing her pregnant stomach against the truck. DOE 2 continued the seizure despite knowing that Plaintiff was pregnant.

210. Upon information and belief, DOES 3 through 20 personally participated in Plaintiff's transportation, detention, or continued confinement. Each such Defendant

knew that Plaintiff was nine months pregnant and due to give birth soon, yet continued or prolonged her confinement without taking reasonable measures to address the risks to Plaintiff and her unborn child.

211. Plaintiff's pregnancy did not supply a lawful basis to detain or arrest her. DOES 1 and 2 lacked reasonable suspicion to detain Plaintiff and probable cause to arrest her. To the extent DOES 3 through 20 continued or prolonged Plaintiff's seizure after learning the facts showing that it lacked a lawful basis, they did so in violation of her Fourth Amendment rights. As a direct and proximate result, Plaintiff suffered loss of liberty, physical injury, pain, emotional distress, humiliation, and other damages in an amount to be proved at trial.

212. Plaintiff seeks compensatory damages and, against any individual Defendant whose conduct warrants them, punitive damages, together with costs and such other relief as the Court deems proper.

**ELEVENTH CLAIM FOR RELIEF**

**Fourth Amendment—Excessive Force**

***Bivens***

(By Plaintiff against DOES 1-2)

213. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

214. This claim is brought against DOES 1 and 2 in their individual capacities under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for the use of excessive force in violation of the Fourth Amendment

215. At all relevant times, DOES 1 and 2 were federal officers acting under color of federal authority. The Fourth Amendment protected Plaintiff against objectively unreasonable force during her seizure.

216. Upon information and belief, DOE 1 twisted Plaintiff's arm behind her back, stated words to the effect of "You wanna get killed?", and pressed or pushed Plaintiff's pregnant stomach against a truck while physically detaining her. DOE 1

continued to restrain and transport Plaintiff despite being able to see that she was pregnant.

217. Upon information and belief, DOE 2 grabbed Plaintiff, prevented her from leaving, and participated in restraining her and pressing her pregnant stomach against the truck. DOE 2 mentioned Plaintiff's pregnancy multiple times but continued to use force without taking reasonable measures to avoid pressure on her stomach.

218. The force used by DOES 1 and 2 was objectively unreasonable under the circumstances. They knew or could plainly see that Plaintiff was pregnant, yet used force that placed pressure on her stomach. Their conduct was particularly unreasonable in light of the absence of reasonable suspicion or probable cause to detain or arrest her.

219. As a direct and proximate result of DOES 1 and 2's conduct, Plaintiff suffered physical pain, emotional distress, fear for her safety and that of her unborn child, humiliation, and other damages in an amount to be proved at trial. Plaintiff seeks compensatory damages and, against any individual Defendant whose conduct warrants them, punitive damages, together with costs and such other relief as the Court deems proper.

## TWELFTH CLAIM FOR RELIEF

### Violations of Bane Act (Cal. Civil Code § 52.1)

(By Plaintiff against DOES 1-20)

220. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

221. California Civil Code section 52.1 (the "Bane Act") prohibits any person from interfering, or attempting to interfere, by threats, intimidation, or coercion, with the exercise or enjoyment of rights secured by the Constitution or laws of the United States or the State of California.

222. Defendants DOES 1 through 20, inclusive, while acting within the course and scope of their employment, intentionally interfered with Plaintiff's constitutional rights by means of threats, intimidation, and coercion.

223. Defendants' conduct included, but was not limited to, entering private business property, detaining and arresting Plaintiff without lawful justification, twisting Plaintiff's arm behind her back and pressing her pregnant stomach against the truck, handcuffing her, placing her in an unmarked vehicle, and causing her to be jailed for multiple hours despite being 9 months pregnant and being a United States citizen.

224. During the incident, Defendants engaged in threats, intimidation, and coercion independent of the underlying detention, including the use of significant physical force to seize and restrain Plaintiff, the refusal to check her United States citizenship status, and the prolonged detention and jailing of Plaintiff without lawful basis.

225. The conduct of Defendants constituted threats, intimidation, or coercion separate from, and in addition to, the underlying unlawful detention, including the use of physical restraints and prolonged confinement to compel Plaintiff's compliance and submission.

226. Upon information and belief, DOE 1 physically grabbed Plaintiff, prevented her from leaving, forcefully pushed or assisted in pushing or pressing her pregnant stomach against the truck, and restrained her despite knowing that Plaintiff was compliant, posed no threat, and had committed no crime.

227. DOE 1 used physical force and restraint to intimidate and coerce Plaintiff into submitting to the unlawful detention and arrest.

228. Upon information and belief, DOE 2 physically grabbed Plaintiff, prevented her from leaving, forcefully pushed or assisted in pushing or pressing her pregnant stomach against the truck, and restrained her despite knowing that Plaintiff was compliant, posed no threat, and had committed no crime.

229. DOE 2 maintained or assisted in maintaining the painful restraint after Plaintiff had been subdued and any conceivable need for force had ended

230. Upon information and belief, DOES 3 through 20, inclusive, intentionally interfered with Plaintiff's rights through threats, intimidation, or coercion by

personally participating in, directing, approving, ratifying, or knowingly permitting Plaintiff's unlawful detention, use of force, transportation, and continued confinement. These Defendants caused, supplied, adopted, or approved materially false information, including allegations that Plaintiff was touching the agents and obstructing arrest, to justify and prolong her detention. Despite knowing that Plaintiff was a United States citizen or possessed readily verifiable proof of citizenship, DOES 3 through 20 caused or knowingly permitted her detention to continue after any arguable justification had dissipated. In committing these acts, they acted with the specific intent to interfere with Plaintiff's constitutional and statutory rights or with reckless disregard for those rights.

231. Through the above-described conduct, Defendants interfered with Plaintiff's rights, including but not limited to the right to be free from unreasonable searches and seizures, the right to liberty, and the right to due process of law.

232. Defendants acted intentionally, knowingly, and with reckless disregard for Plaintiff's rights, and their conduct was malicious, oppressive, and in conscious disregard of those rights.

233. As a direct and proximate result of Defendant's conduct, Plaintiff suffered physical pain, emotional distress, humiliation, and other damages.

234. The conduct of Defendants was a substantial factor in causing Plaintiff's harm.

235. Defendants are liable for Plaintiff's injuries because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations.

236. Plaintiff seeks compensatory damages, statutory damages, attorneys' fees, costs, and all other relief deemed just and proper.

237. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## PRAYER FOR RELIEF

238. WHEREFORE, Plaintiff respectfully requests entry of judgment in her favor and against Defendants the UNITED STATES and DOES 1 through 20,

inclusive, as follows:

a. For compensatory damages, including damages under federal law, in an amount to be proven at trial;

b. For punitive damages against the individual DEFENDANTS, DOES 1 through 20;

c. For reasonable attorneys' fees pursuant to applicable law;

d. For costs of suit incurred herein;

e. For pre-judgment and post-judgment interest as allowed by law; and

f. For such other and further relief as the Court may deem just, proper, and appropriate.

DATED: September 29, 2026

**CARRILLO LAW FIRM, LLP**

By: ______________________

Maria F. Garcia Baldizzone, Esq.,
*Attorney for Plaintiff*

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

DATED: September 29, 2026

**CARRILLO LAW FIRM, LLP**

By: ______________________________
Maria F. Garcia Baldizzone, Esq.,
*Attorney for Plaintiff*